Nov. Term,
1834.

ENNIS
v.
WALLER.

*Monday,*
*December* 8.

(1) Vide note (4) to *Findley* v. *Buchanan,* Vol. 1, of these Rep. 13.— *Shirley* v. *Hagar,* ante, p. 225.

---

ENNIS *v.* WALLER.

In an action by a sheriff for the purchase-money of land sold by him on execution, the judgment and proceedings on which the execution issued, must be averred in the declaration and proved on the trial.

In such an action, the sheriff's return to the execution must be stated in the declaration.

Sheriffs' sales of real estate are within the statute of frauds.

*Monday,*
*December* 8.

APPEAL from the *Daviess* Circuit Court.

STEVENS, J.—*Waller,* as sheriff, &c. declared against *Ennis* in an action of assumpsit. The declaration originally contained four counts, but the third and fourth counts are not now before the Court, having been finally disposed of in the Court below on demurrer.

The allegations in the first two counts are in substance as follows:—That *Waller,* the plaintiff, was sheriff, &c.; that on the 5th day of *October,* 1831, a writ of *venditioni exponas* issued, &c. directed to him as such sheriff, commanding him to sell certain lands, &c. described and set out in the writ, which lands, it was recited in the writ, had been levied on by a writ of *fieri facias* to satisfy a judgment in the Circuit Court of the county of *Martin,* in favour of *Elizabeth Shelmire* against *Frederick Sholts* and others, for the sum of 756 dollars and 41 cents

debt and 23 dollars and 21 cents costs; that said writ of *venditioni exponas* duly came to his hands, and in pursuance of its commands he legally sold said lands under said writ, and that the said *Ennis*, the defendant, became the purchaser of part of those lands, that is, a certain quarter section of land which is described by its numbers, &c., for the sum of 350 dollars; that he then and there, with the knowledge and consent of *Ennis*, endorsed on said writ that he had sold the said quarter section of land to him the said *Ennis*, for the sum of 350 dollars; and that he shortly afterwards made, executed, and tendered to him the said *Ennis*, the proper and legal conveyance, but he refused to take it, and also refused to pay the purchase-money, &c. *Ennis*, the defendant, pleaded three several pleas,—1st, *Non-assumpsit;* and secondly and thirdly, special pleas in bar. The special pleas were demurred to and the demurrers sustained by the Court; upon the plea of *non-assumpsit*, issue was joined, a jury trial had, and a verdict and judgment rendered for the plaintiff.

The whole of the evidence given by the plaintiff to the jury, is spread upon the record by a bill of exceptions; by which it appears that no evidence went to the jury of any judgment, record, or proceeding, anterior to the writ of *venditioni exponas*. The writ of *venditioni exponas* and the proceedings of the sheriff on that writ, constitute the whole of the evidence given.

It appears also by a bill of exceptions, that the defendant asked the Court to instruct the jury that the contract and sale were within the statute of frauds, being a sale of lands; and that unless the agreement or some memorandum thereof was in writing, the action could not be sustained. He also asked the Court to further instruct the jury that the plaintiff could not recover unless he produced the record, or legal evidence of the record, of the judgment and proceedings on which the writ under which he claimed is bottomed. Both of these instructions the Court refused.

Various other exceptions and objections appear of record, and several other weighty points are urged upon this Court for consideration, but they have not been sufficiently examined to decide upon them, such decision being considered unnecessary in this case. This opinion is confined to the objections arising out of what is already above stated.

The first question is, Were the demurrers to the defendant's pleas correctly sustained?

The pleas are, obviously, insufficient, and the demurrers to them would be well taken, if the plaintiff had a sufficient declaration. His declaration however is radically defective, and therefore he cannot complain of the insufficiency of the pleas: although the pleas may be a nullity, yet the plaintiff is not entitled to a judgment, and no default of the defendant in his pleadings can enable him to recover; hence the Court erred in sustaining the demurrers.

The plaintiff claims to recover by virtue of an official sale made by him as sheriff, &c. under a writ of *venditioni exponas*, and if those proceedings do not vest in him a legal cause of action, he must go out of Court. Now this writ of *venditioni exponas*, as well as all the proceedings of the sheriff under it, are null and void, and give no legal cause of action, unless there were remaining of record, unpaid, unreversed, and in full force, just such a judgment, and such proceedings as are recited in said writ; and before the plaintiff can recover, he must show upon the face of his declaration, by special and substantive averments, the existence of these facts. *Ennis* is a stranger to the judgment and proceedings, and is not presumed to be cognizant in any way of them, and has a right to traverse the facts.

Again, the plaintiff should have shown and alleged in his declaration, the substance, tenor, and effect, of the return he made as sheriff to the writ on which he avers he made his sale. His right to recover the purchase-money in his own name, depends to a great extent upon that return. The defendant, *Ennis*, bid off the land, but refused to pay the money, and, under that state of facts, the sheriff was not bound to make himself liable for the money; he might, if he chose so to do, have returned that the property remained on hand unsold for want of buyers; and if he did so return, he has no cause of action or demand against the purchaser for the purchase-money. He avers that he did, "with the knowledge and consent of the defendant, endorse on the writ that he had sold said quarter section of land to him for the sum of 350 dollars;" but he does not say that he made any such return. Under the circumstances of the case, he could only make one of two returns. He either returned that the property remained on hand unsold

for want of buyers, or that he had made the sum of 350 dollars by the sale of said land to the defendant *Ennis.* Now which did he do? It is material to know; but his declaration is silent. This sale was made by the sheriff in the month of *November,* 1831, after the repeal of the 7th section of the act of the 20th of *January,* 1826, entitled an act amendatory of the law, &c. and before the passage of the act of the 2d of *February,* 1833, amending the act subjecting real and personal estate to execution; and therefore it must be governed by general principles, without the aid of those enactments. It may however be remarked, that the case is not brought within either the letter or meaning of either of those enactments, and could not be helped out by them, were they in force.

The next question is, Should the Court have instructed the jury that the plaintiff could not legally recover, unless he produced the record, or legal evidence of the record, of the judgment and proceedings on which the writ of *venditioni exponas* was bottomed?

This is determined in the affirmative in that part of this opinion which relates to the allegation of the same facts in the declaration. Allegations and proofs must always agree. If it were material to aver those facts, it was also material to prove them; and if they ought to have been proved, they should have first been stated, in a traversable form and manner, in the declaration: the Court, in refusing this instruction, committed again, in part, the same error it had committed in sustaining the demurrers to the pleas.

The next and last question is, Should the Court have instructed the jury that the sales of a sheriff by him made as sheriff, under a writ of execution founded upon a judicial judgment of a Circuit Court, are within the statute of frauds?

This is a question about which there may, perhaps, be some diversity of opinions. Lord *Hardwicke,* in the case of *The Attorney General* v. *Day,* 1 Ves. sen. 218, said that a judicial sale before a master in chancery was not within the statute of frauds; but the case in which he made the remark is very obscurely reported, and it would seem rather to have been a consent of parties made in open Court, entered upon the record and confirmed by the Court. It is also laid down in general terms, by several law writers, that judicial sales before a master in chancery are not within the statute of frauds. These *dicta,* it is

found, are all bottomed on the *dictum* of Lord *Hardwicke;* but neither his lordship, nor any of his copiers, has favoured us with any satisfactory reason why it is so; and indeed it is not easy to comprehend the reason. It cannot be because they are sales at auction, for it is settled without a dissenting *dictum,* that sales at auction are as much within the statute as any other sales. And in the sale of either goods and chattels or lands, it is now well settled that the auctioneer is an agent for both the vendor and vendee, and that his memorandum in writing of the bargain and sale, will satisfy the statute, if it contain a full and sufficient contract and is signed by the auctioneer; that is, if it contain the parties' names, a full and sufficient description of the land, commodity, or thing sold, the price given, and the time and terms of payment. *Simon* v. *Motivos,* 3 Burr. Rep. 1921.—1 Bl. Rep. 599.—*Hinde* v. *Whitehouse,* 7 East, 558.—*Heyman* v. *Neale,* 2 Campb. Rep. 337.—1 Dane's Dig. 241.—*Clason* v. *Bailey,* 14 Johns. R. 484.—*White* v. *Proctor,* 4 Taunt. 209.—*Simonds* v. *Catlin,* 2 Caines' Rep. 61.—Sugd. on Vend. 57-64.

In all sales at auction of either lands or goods, the person holding the auction describes the land, commodity, or thing offered for sale, the terms and time of payment, and the bidder consummates the contract by bidding the price he will pay; which added to the terms and propositions of sale, and signed by the auctioneer, makes a contract in writing signed by the agent of both parties, and satisfies the statute. *Catlin* v. *Jackson,* 8 Johns. Rep. 520, 550 (1).

In *South-Carolina,* in the case of *Jenkins* v. *Hogg,* 2 Const. Rep. 821, it was decided, that a commissioner's sale of land under an order of a Court of chancery, was within the statute of frauds, but that the commissioner was the agent of both parties, and his entry in the sale-book was a sufficient memorandum in writing to satisfy the statute, if it contained a sufficiency and was signed by the commissioner. In *Kentucky,* a sale of lands by the trustees of a town at auction was decided to be within the statute of frauds, and that the trustees were the agents of both parties, but that their entry of sale in their sale-book did not satisfy the statute, not being signed by them. *Thomas* v. *Trustees, &c.* 3 Marsh. 298. In *New-Hampshire,* in the case of *Sherburne et al.* v. *Shaw,* 1 N. Hamp. Rep. 157, it is decided that the sale of lands at auction are within the statute, and that

the memorandum, sale-book, &c. of the auctioneer, must contain a full, ample, and complete description of the lands sold, names of the parties, price, terms of payment, &c. or it will not satisfy the statute.

It is, perhaps, useless to further multiply authorities; it is undoubtedly clearly settled, both by reason and judicial decision, that sales of land at auction are within the statute of frauds: and it may, without fear of controversy, be said, that the better reason, and a large majority of adjudicated cases, fairly establish that sheriffs' sales under writs of execution are also within the statute; that the sheriff is the agent of both parties; and that his return to his writ of the levy, sale, &c. if sufficiently full and complete, and signed by him, will satisfy the statute.

In the state of *New-York*, in the case of *Simonds* v. *Catlin*, 2 Caines' Rep. 61, Judge *Kent*, who delivered the opinion of the Court, says, that there is nothing in either the form, substance, or nature of sheriffs' sales, to protect them from the introduction of fraud and perjury, any more than there is in other sales at auction; and that there is no reason why they should not be within the statute, as well as other sales at auction. He then adds that they are within the statute, but that the sheriff's return in writing on his execution, of the levy, sale, &c. is sufficient to satisfy the statute, provided such return is signed by the sheriff, and contains with certainty the parties' names, the amount bid, the terms and time of payment, and a sufficient description of the lands as to metes, bounds, where situate and lying, number or supposed number of acres, &c. In the case of *Jackson* v. *Catlin*, 2 Johns. R. 248, this opinion of Judge *Kent's* is reviewed and fully sanctioned; and, again, in the case of *Catlin* v. *Jackson*, 8 Johns. Rep. 520, it is again reviewed and affirmed.

In the city of *Baltimore*, in 1824, in the Court of Appeals of *Maryland*, it was unanimously decided by a full Court, in an opinion delivered by the chief justice of the state, after the most profound and elaborate arguments by Messrs. *Wirt* and *Harper* on one side, and Messrs. *Taney* and *Magruder* on the other, that a sheriff's sale of land was within the statute of frauds, but that a proper return of the sheriff in writing to his writ, would satisfy the statute. *Barney* v. *Patterson's Lessee*, 6 Har. & J. 182–205. It was also decided in the same Court, in the case of *Boring* v. *Lemmon*, 5 Har. & J. 223, that in sales of land by a sheriff on execution, the sale, sheriff's return, and the payment

of the purchase-money, pass the legal estate and vest it in the purchaser; and that deeds are taken out of abundant caution to multiply the evidence of the vendee's title, and not, as is generally supposed, to vest the legal estate in the purchaser.

In conclusion it is only necessary to add, that after the most patient and careful examination of the statute and the various decisions under it, no reasonable doubt is left respecting the point in controversy. Statutes of frauds and perjuries are enacted for the peace and repose of society, to protect men from hasty and inconsiderate engagements, and against any misconstruction of their words by witnesses who might misunderstand, or who might be in the employment and under the influence of the party wishing to avail himself of such an engagement. Upwards of one hundred and fifty years have elapsed since the first statute was passed in *England*, and every year from that time down to the present day, has added new and convincing proof of the salutary effects and beneficial influence of such laws upon the transactions of men, and no attempt should ever be made to circumscribe their due and legal operation by strict and illiberal judicial constructions. Sheriffs' sales have nothing in their nature, form, or manner of proceeding, to protect them from errors, misunderstandings, frauds, or perjury, more than other public sales have; therefore they are within the mischiefs intended to be prevented by the statute, and consequently must be within the statute.

The Court should have given the instruction asked.

M'KINNEY, J.—I concur in opinion that this judgment be reversed. There is, however, a question presented by instructions asked by the defendant, and refused to be given by the Circuit Court to the jury, which denies the right of the plaintiff as sheriff, to maintain the action, and which, from its bearing upon this case and its general importance, in my humble opinion claims examination. To its examination, and to the presentment of my views, I am the more strongly impelled from a consciousness that a reversal of the judgment, for the reasons expressed in the opinion delivered, leaves the question as to the right to maintain the action admitted,—a right which, from investigation, I am satisfied the law does not give.

The instructions to which I refer are the following:—1. That no action can be sustained to charge the defendant on any

contract or sale of land, unless the agreement, or some memorandum thereof, be in writing and signed by the party to be charged, or by some lawfully authorised agent; 2. That there is no law authorising the sheriff to bring this action.

The sale of the fee-simple of land by the sheriff was unknown to the common law. The sequestration of the profits of the land by a writ of *levari facias*, or the possession of a moiety of the lands by the writ of *elegit*, and in certain cases of the whole of it by *extent*, were the modes of reaching it in *England*. The statute of 5 *Geo*. 2. c. 7, passed in 1732, changed the common law, only however in its application to the *American* colonies. That statute made lands, hereditaments, and real estate, chargeable with debts, and subject to the like process of execution as personal estate. That law, it is believed, has been adopted in most of the states of the *Union* since the revolution. With us it is modified, for, by our statute, lands are bound by judgments and subject to execution; the fee-simple, however, is not to be sold, if the rents and profits for seven years will sell for a sufficient sum to discharge the execution; and land is exempted from sale, if there be personal property of sufficient value to discharge the debt. I have adverted to the common law to show, that, by its authority, the sheriff could not sell land, and consequently, could not maintain an action to recover the purchase-money. The right to sell, then, is given by our statute, and as the statute does not give him any additional authority except to sell, we must inquire whether the right to maintain an action is incidental to the authority to sell; for if it be not, he cannot maintain the action. In this inquiry, we will be aided by recurring to the general character of that officer, and to the nature of his duties, with an execution in his hands.

The sheriff is the officer of the law, and is the medium through which the law executes its judgments. His duties are not discretionary, nor are they arbitrary; they are clearly defined, and must be in accordance with the requirements of law. He stands unconnected with either the plaintiff or defendant in an execution, and cannot be regarded as the agent of either, for the admission of an agency, constituted by one party, would present the officer of the law with so much of its authority as is confided to him, in opposition to the rights of the other; and in such a struggle, so subversive of the principles of the law, the interests of the latter would be sacrificed. An agency, so

far from being admitted, would be fraudulent, and vitiate an official act founded upon it. A sheriff is responsible to each party in the execution of a writ. If he fails to return it on its return day, makes a false return, neglects to pay over the money collected, and for various other acts, he is responsible to the plaintiff. To the defendant in an execution he is also liable, if he levies on and sells one description of property more privileged than another, as land, with us, where there is sufficient personal property, and for other acts, unnecessary to enumerate, beyond the sphere of his duty, operating to the injury of the defendant.

There is an obvious distinction between sales of land and of personal property, and of the lien by which they are respectively held. A judgment binds lands from its rendition: an execution, personal property only from its delivery to the officer. A sheriff selling land cannot deliver possession of it, that, if withheld, must be obtained through an action of ejectment. With personal property it is otherwise; possession accompanies the purchase. By the writ of *venditioni exponas* in this case, the sheriff is commanded to sell the land, &c. returned on the *fieri facias* as levied on, and with him rested the responsibility of the sale. He is under no obligation, if a person notoriously insolvent bids, to declare him the purchaser; nor is he bound, if one who is solvent bids, but who he believes would not perfect the sale by the payment of the purchase-money, to accept the bid. He should re-expose the property to sale; for the conduct of the sale is emphatically at his peril.

The return days of all executions being fixed by law, a *venditioni exponas* may be put into the hands of a sheriff, only allowing him time to advertise and sell. If in such a case he should advertise and sell, and the purchaser refuse to pay the purchase-money, What is the sheriff's situation? We are not without light in determining it. In *Zantzinger* v. *Pole*, 1 Dall. Rep. 419, the chief justice said, "By the spirit and words of the act, the sheriff must sell not merely to the highest, but to the best bidder: if the highest bidder was unable to pay, the sheriff might make an offer to the next highest; and that if the property was not paid for after a sale, the return should be that 'The premises were knocked down to *A. B.* for so much, that the said *A. B.* has not paid the purchase-money, and that, therefore, the premises remain unsold.' " In *Scott* v. *Bruce*, 2 Harr.

& Gill, 262, the case of *Zantzinger* v. *Pole* was cited, and its authority admitted. The case in *Maryland* was as to the suffi-ciency of a special return by a sheriff as follows:—"Laid per schedule, and property sold to *A. B.* for $—; resold to *C. D.* for $—, and sale not complied with, and of course on hand." This property was land. By the Court,—The officer may return in this special manner, instead of returning in general terms, that the property was unsold for the want of buyers. We thus find by these cases, that the situation of the sheriff in the case I supposed, would not be one of danger or of liability. By re-exposing the property, and not selling for the want of buyers, he could return such fact, and his duty would have been performed. In neither of these cases, nor in any I have seen, nor in any elementary work, do we find a *dictum* that would warrant the sheriff suing in his own name, to enforce a compliance with a sale of land. Forms, it has a thousand times been said, and correctly too, afford evidence of the law; but in none I have examined, have I found authority for this action.

If a sheriff accepts a bid, it being the highest, and reposing confidence in the purchaser, returns the land sold, and thereby in the event of the non-payment of the purchase-money, becomes himself liable for the sum at which it was sold, I apprehend, although in default, he is not without remedy. The sale and the application of the purchase-money, upon the hypothesis of its being paid by the sheriff, may bring him within the principle decided in the case of *Muir* v. *Craig*, at a former term of this Court. In that case, the land of *Craig*, a judgment-debtor, was sold by execution, and the proceeds of the sale applied to the satisfaction of the execution against him. *Craig* being without title to the land thus sold, and no benefit by the purchase and payment of his money accruing to the purchaser, *Craig* was held to be equitably bound to refund to the purchaser the money paid upon such sale.

It is contended that as the legislature, by an act in 1826, gave a summary remedy in favour of the sheriff against a purchaser of land failing to pay the purchase-money on a sale by the sheriff, that remedy was merely cumulative, and that the sheriff's right to an action at common law was thus recognized. Such a conclusion seems to be without foundation, as it must be obvious from the nature of the feudal system, opposed to the alienation of land, and which is even now felt, though much

ameliorated, in its operation upon the tenures of land in *England*, and from the restrictions of the common law to which I have adverted, that such an action must have been unknown: It could not have been contemplated: Every principle of the common law opposed it. It is therefore manifest that that remedy was not cumulative but original.

From the apparent unwillingness of the legislature to interfere with the right of the sheriff to re-expose the land to sale, I am fortified in my view of the common law,—for it is expressly enacted, "That nothing in this section, (that referred to in this argument,) shall be so construed as to prevent a sheriff or other officer who may have exposed such property to sale, from re-exposing the same to sale on the same or some other subsequent day, agreeably to the laws now in force." See Acts 1826, p. 50. The act gave the sheriff a remedy by motion, to recover from a purchaser the difference between the sum bid for the land and that which it brought on a subsequent sale,—the first sale not being complied with. That act was not embraced in the revision of 1831, and therefore not in force at the time this suit was brought. It was, however, re-enacted at the session of 1833. See Acts of that year, p. 65. One case only, that of *Cowgill* v. *Wooden, November* term 1830, was brought before this Court, requiring a construction of the former act. In the opinion then given, no reference whatever is made to a common law remedy afforded the sheriff, but the proceeding is placed on its proper basis—the statutory provision.

As no principle of the common law authorises the institution of such a suit by the sheriff, we will see whether it is sanctioned by any analogy in the sale of personal property by that officer. We have said, that on a sale of personal property, the possession, provided the money be paid, accompanies the sale. The sheriff is not bound to deliver possession until the money is paid, and if payment is refused, it is his duty to re-expose the property to sale. *Downing* v. *Brown et al.* Hard. R. 181. It is admitted, that a sheriff having levied upon personal property, can maintain various actions, it being in his possession, against any person who shall divest him of possession; but the right to such actions, trover, trespass, &c., is founded on principles distinct from those that govern the present case.

If, however, the sheriff was entitled to this action at common law, a position which it is thought cannot be maintained, it

becomes important to inquire how far the statute of frauds con-flicts with the common law right. I shall, in the inquiry, con-fine myself to what I regard as settled constructions of the statute, without endeavouring to reconcile positions between which there may not in reality be a difference. It may be assumed as settled, that a sheriff's sale of land is within the statute, and requires a deed or note in writing of the sale, &c. signed by the sheriff. *Simonds* v. *Catlin*, 2 Caines' Rep. 61.—*Jackson* v. *Catlin*, 2 Johns. Rep. 248.—*Barney* v. *Patterson*, 6 Harr. & J. 182.—4 Kent's Comm. 2d ed. 434.—8 Johns. Rep. 520. With this principle settled, before we advance further let us see, even admitting the sheriff's return in this case to be full and complete, what is its legal effect as evidence. No principle is better established, nor is there one based more firmly in reason and justice, than that rule of evidence, that no one can be a witness in his own cause. *Testis nemo in sua causa esse potest.* If this rule be settled, as I contend it is, is it not violated by the sheriff's bringing this action and maintaining it by his return on the execution? It surely is. It is true, as remarked, that the sheriff is a public officer, and that credit is given to the statement upon his return, as to his official acts. See 1 Stark. on Ev. 283.—*Gyfford* v. *Woodgate*, 11 East, 297. But it is not evidence for himself, it is only evidence against third persons; 3 Stark. on Ev. 1357;—1 id. 283; for a sheriff's return is no proof that he has paid over the money levied to the execution-creditor. 1 Stark. on Ev. 283.—*Cator* v. *Stokes*, 1 M. & S. 599. These authorities all harmonize and support the main position.

Can it be contended that the sheriff could give parol evi-dence of the sale? I should think not.

The construction of the statute of frauds I have noticed, pla-ces a sale of land by a sheriff, in some respects, on a footing with sales of land by an auctioneer. The note in writing by an auctioneer, which is held to conclude a purchaser, derives its effect from the view which is taken of the auctioneer. He is regarded as the agent both of the vendor and vendee. *M'Comb* v. *Wright*, 4 Johns. Ch. Rep. 659.—*Clason* v. *Bailey*, 14 Johns. Rep. 484.—Roscoe on Ev. 205, and authorities cited. It is demonstrable, that the agency of an auctioneer cannot apply to the sheriff, for the auctioneer is the creature of the parties, and the sheriff the officer of the law; but even admitting the

**Nov. Term,**
**1834.**

ENNIS
v.
WALLER.

application, it would not warrant the institution of this suit by the sheriff, for the agency of the auctioneer only binds the purchaser at the instance of the vendor (1). Chancellor *Kent*, in reviewing the opinion of Lord *Hardwicke*, in *The Attorney General* v. *Day*, 1 Ves. sen. 218, "that a judicial sale of an estate took it entirely out of the statute," says, he does not comprehend the reason of it, and thinks it cannot be because the sale is at auction, as those sales if they relate to land are within the statute; nor does he think that sheriffs' sales are free from all danger of introducing fraud or perjury. With this opinion of Chancellor *Kent* it would seem that all would concur. But there is a difference between the judicial sales spoken of by Lord *Hardwicke*, and a sale of land with us by a sheriff: admitting him to be correct, his doctrine does not apply, for the judicial sales are made by order of the Court of chancery through a commissioner or auctioneer.

Again, it is laid down that "a mere agent or attorney having no beneficial interest in a contract, cannot maintain an action in his own name." See *Gunn* v. *Cantine*, 10 Johns. R. 387.— 1 Chitt. Pl. 5. And although in *Williams* v. *Millington*, 1 H. Bl. 81, it was held that an auctioneer employed to sell goods of a third person by auction, may maintain an action for goods sold and delivered against a buyer, though the sale was at the house of such third person, and the goods were known to be his property; yet upon examination it will be seen that this decision is not in opposition to the principles for which I contend. The auctioneer has not only a possession coupled with an interest in the goods he is employed to sell, but also a special property with a lien for charges of sale, duty to the crown, &c. in *England*.

I conclude my remarks with the settled conviction, that as this suit is without a legal foundation, no amendment of the declaration, or adduction upon trial of more full proof, can avail the plaintiff. I may be mistaken in my opinion, but if I am, I am gratified by the reflection that the mistake does not arise from the absence of careful and assiduous investigation.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*S. Judah*, for the appellant.

*C. Dewey* and *J. Law*, for the appellee.

(1) If the auctioneer himself bring the suit, his memorandum of the sale is not sufficient to take the case out of the statute, according to the cases of *Wright* v. *Dannah*, 2 Campb. 203, and *Farebrother* v. *Simmons*, 5 Barn. & Ald. 333. The language of the Chief Justice, in the case last cited, is:—

"In general, an auctioneer may be considered as the agent and witness of both parties. But the difficulty arises, in this case, from the auctioneer suing as one of the contracting parties. The case of *Wright* v. *Dannah*, seems to me to be in point, and fortifies the conclusion at which I have arrived, viz. that the agent contemplated by the legislature, who is to bind a defendant by his signature, must be some third person, and not the other contracting party upon the record."

The Court of K. B. very recently (in 1833) referred to those cases, but gave no opinion as to their correctness. The case in which they were mentioned was this:—An auctioneer sued for the price of the goods sold by him; and the memorandum of the sale which he relied on, was made at the sale by his clerk. Verdict for the plaintiff, and a rule for leave to move for a nonsuit. Per *Denman*, C. J.—"I think this case is distinguishable from *Wright* v. *Dannah*, 2 Campb. 203, and *Farebrother* v. *Simmons*, 5 Barn. & Ald. 333; and it appears to me that the clerk was not acting merely as an automaton, but as a person known to all engaged in the sale, and employed by any who told him to put down his name. Without, therefore, interfering with the cases that have been cited, I think the rule must be discharged." The other judges expressed similar opinions. *Bird* v. *Boulter*, 4 Barn. & Adolp. 443.