HUNT<br>v.<br>GREGG.

---

### HUNT *v.* GREGG.

If the execution-plaintiff buy land at sheriff's sale at a price exceeding the amount of the execution, and refuse to make payment, the sheriff may, by motion against the purchaser, recover the excess with ten *per cent.* damages thereon.

It was held that land sold, after the passage of the act of 1842, on execution on a judgment which was rendered in 1841 on a contract the date of which did not appear, was correctly valued under the appraisement law of 1841.

A sheriff's notice of an intended motion against a purchaser of land on execution to recover the purchase-money, need not state that the contract was in writing.

Sales of land as well as of goods at auction are within the statute of frauds. The auctioneer is generally the agent of both parties to the sale; and his insertion of the name of the purchaser, immediately on receiving the bid and on the fall of the hammer, in a memorandum of sale containing the terms of the contract, is a signing of a note in writing under the statute, and binds the purchaser.

So, a memorandum of the sale, stating with certainty the terms and conditions of the contract, and signed by the auctioneer with his own name, is sufficient to bind both parties.

Sales of land on execution are also within the statute of frauds; and the sheriff's return of the execution stating fully the terms of the contract, if made immediately on *striking* off the property, will bind the purchaser under the statute; but a return subsequently made will not have that effect.

A sheriff cannot proceed by motion to recover the purchase-money of land sold on execution, unless he has previously offered the purchaser a deed for the land, provided he would pay the purchase-money.

There is an irregularity in going to trial in such case without an issue.

It is questionable whether an action at common law can be sustained by a sheriff on a contract of sale on execution effected through his own agency in the capacity of an auctioneer. But the objection, if valid, to a common law suit in such case is not applicable to the form of action by motion, which is expressly authorized by statute whenever the sheriff makes a valid sale on execution, and the purchaser refuses to pay his bid.

APPEAL from the *Dearborn* Circuit Court.                <span>*Tuesday,<br>June 23.*</span>

DEWEY, J.—This was a motion by *Gregg*, sheriff of *Dearborn* county, against *Hunt* to recover the price of a town-lot,

purchased by him at a sale on execution. The notice of the intention to make the motion (which sets forth the plaintiff's claim) states that *Hunt* recovered a judgment in the Circuit Court against *Guard* for 507 dollars and 66 cents and costs, which was stayed by *Hayes;* the issuing of an execution against *Guard* and *Hayes,* and the delivery thereof to the plaintiff as sheriff; the levy of the writ upon two town-lots, Nos. 11 and 12, in *Lawrenceburgh* as the property of *Hayes;* the appraisement of the lots by two disinterested house-holders, No. 11 at 1,000 dollars, and No. 12 at 1,600 dollars, without reference to any incumbrance; the notice of the time and place of sale of the lots; the sale by the sheriff of lot No. 12 to *Hunt* the defendant, he being the highest and best bidder, for the price of 1,066 dollars and 67 cents; and the tender by the sheriff of a deed to *Hunt,* the demand of the purchase-money, and his refusal to pay it. The parties appeared and submitted the cause to the Court without an issue of law or fact. The Court rendered a judgment for the plaintiff for 548 dollars and 60 cents, the difference between the sum bid by *Hunt* for the lot and the amount due to him on the judgment, together with ten *per cent.* on the above-stated sum, making in all 603 dollars and 46 cents, and for costs.

The plaintiff proved on the trial the judgment, stay thereof, and the execution, as alleged in the notice: he also produced the sheriff's return on the execution. The return stated particularly, and according to the dates mentioned in the notice, the levy of the execution upon the town-lots (describing them); the appraisement of the lots; the advertisement of the time and place of sale, stating the manner; the offer of the rents and profits for seven years, for which there was no bid; and then proceeded in these words,—"And I did then and there in like manner proceed to offer the fee-simple of in-lot numbered 12, as above described, to the highest bidder for cash, and sold the same to *Jesse Hunt* for one thousand and sixty-six dollars and sixty-seven cents, he being the highest and best bidder therefor, and that sum being more than two-thirds of the appraised value of said lot, there being more than three persons present who had an opportunity of bidding for said property. The same was then and there

sold to *Jesse Hunt* in due form of law." The return bore no date, and none, was proved, nor did it appear when the return was filed in the clerk's office. The execution was dated June 7th, 1842, and was returnable in 180 days. The defendant introduced evidence tending to show that lot numbered 12 was incumbered by mortgages, and that his bid for it was on condition that it was unincumbered, to which there was rebutting evidence on the part of the plaintiff. The above was all the material evidence given in the cause.

This is a proceeding founded on the statute, which provides that when a purchaser of property sold on execution shall fail to pay the purchase-money, the officer making the sale may recover the price bid, with ten *per cent.* damages, by motion. R. S. 1838, p. 286.

It is objected against the judgment of the Circuit Court, that the motion cannot be sustained, because the defendant, *Hunt*, was both the execution-creditor and the purchaser at the sheriff's sale. We do not think this objection tenable. The statute makes no exceptions: it gives this kind of remedy against all purchasers who refuse to pay. Had the sum bid by *Hunt* not exceeded the amount due on his execution, there would have been no occasion to institute the suit, because the sheriff might at once have credited the execution with the price. But the price exceeded the amount of the execution, and the execution-defendant, *Hayes*, whose property was sold, had an interest in the excess: it was the sheriff's duty to collect it for him. The sheriff might indeed have re-exposed the property to sale on the failure of *Hunt* to pay his bid. But it would still have been his duty, had the bid on the second sale not equalled that at the first, to have collected the difference from the first bidder, by a motion similar to this. R. S. 1838, p. 287. The sheriff, however, had a right to enforce the payment of the bid by *Hunt*, who was not entitled to waive the sale without the consent of *Hayes*.

Another objection urged against the judgment of the Circuit Court is, that the ten *per cent.* was allowed. This objection cannot prevail. Had a stranger been the purchaser and refused to pay, he would have been liable to the ten *per cent.* damages on the amount of his bid, which damages would have

belonged to *Hunt* as the execution-creditor in proportion to the amount of his judgment, and the rest would have gone to the execution-debtor whose property was sold. The assessment of ten *per cent.* therefore, on the excess of *Hunt's* bid over the amount of his judgment, was correct.

It is also alleged that the appraisement of the lot sold was illegal, because the appraisers did not take into consideration incumbrances. This objection is founded on the statute of 1842, which was passed before the sheriff's sale took place, and which required the appraisement to be of the value of the property exclusive of incumbrances. Laws of 1842, p. 64. But that statute did not govern the appraisement in question. The judgment on which the execution issued was rendered in 1841 on a contract the date of which does not appear. The appraisement at that time was required to be of the whole property taken in execution without regard to incumbrances. Laws of 1841, p. 130. The law of 1842 therefore was, so far as that judgment was concerned, according to the decision of the Supreme Court of the *United States* in *Bronson* v. *Kinzie*, 1 Howard, 311, unconstitutional and void. That decision, whatever may be our opinion of its correctness, is binding upon us. The appraisement was correctly made under the law of 1841.

It is contended that the notice is insufficient, because it does not show that the sale made by the sheriff to *Hunt* was evidenced by a writing signed by *Hunt* or his agent agreeably to the statute of frauds. This objection is not tenable. The notice in this case stands in the place of a declaration and contains the plaintiff's cause of action. A parol agreement for the sale of land was valid at common law. The statute of frauds, though it requires the proof of the contract to be in writing, does not affect the rules of pleading. The declaration, since as before the statute, may set forth the agreement without stating it to be in writing. 1 Will. Saund. 211, n. 2. *Id.* 276, n. 1 and 2.—Stephen's Pl. pp. 312, 374.—2 Blackf. 51, n. 2.

But there is an objection to the sufficiency of the proof in this cause, arising from the statute of frauds, which is fatal to the judgment of the Circuit Court.

Sales of land as well as of goods at auction are within that

statute. *Walker* v. *Constable*, 1 B. & P. 306.—*Emmerson* v. *Heelis*, 2 Taunt. 38.—*White* v. *Proctor*, 4 Taunt. 209.— *Kemeys* v. *Proctor*, 3 Ves. & Beam. 57.—*Kenworthy* v. *Schofield*, 2 B. & C. 945. An auctioneer is generally the agent of both parties to the sale; and the insertion by him of the name of the purchaser, immediately on receiving the bid and on the fall of the hammer, in a memorandum of sale containing the terms of the contract, is a signing of a note in writing in compliance with the statute, and binds the purchaser. *M'Comb* v. *Wright*, 4 Johns. Ch. R. 659.—*Emmerson* v. *Heelis, supra.*—*White* v. *Proctor, supra.*—*Hicks* v. *Whitmore*, 12 Wend. 548. See, also, *Seton* v. *Slade*, 7 Ves. 265. So, doubtless, a memorandum of the sale, stating with certainty the terms and condition of the contract, signed by the auctioneer with his own name, is sufficient to bind both parties. *Heyman* v. *Neale*, 2 Campb. 337.

Sales of land on execution by a sheriff are also within the statute of frauds. *Simonds* v. *Catlin*, 2 Caines' R. 61.—*Jackson* v. *Catlin*, 2 Johns. 248.—*Catlin* v. *Jackson*, 8 Johns. 520.—*Ennis* v. *Waller*, 3 Blackf. 472. As these sales are required to be at public vendue, the sheriff in making them is necessarily an auctioneer. But whom does he represent? An ordinary auctioneer is most obviously the agent of the seller who employs him; and the law recognizes him as the agent of the purchaser so far as to authorize him to note down and place the purchaser's name to the terms of the contract, immediately after the property is struck off; or to bind the parties by the signature of his own name. Thus a contract can be formed through the agency of an auctioneer, capable of being enforced against either party to the sale. But can the sheriff be viewed as the mutual agent of both parties? There is no difficulty in considering him, as an ordinary auctioneer is considered, as the agent of the purchaser, with authority to bind him by inserting his name in a proper memorandum so soon as the sale is closed; but it is not easy to perceive what other party he can bind, as an agent. He certainly cannot make or sign a contract binding the execution-creditor to convey the land sold on the execution, for the title is not in the creditor. It is in the debtor; and we do not understand on what principle the sheriff can

be viewed as his agent in making the sale. The sheriff derives his authority to sell from the law, and can exercise it, and is bound to exercise it, in despite of the debtor and against his will. He cannot, therefore, we are inclined to think, make a contract of sale in behalf of the debtor, which can be specifically enforced against him in equity, or on which a suit at law can be maintained. No inconvenience can grow out of this view of the matter (allowing it to be correct), for the sheriff, or his successor, is required by the statute to make a conveyance to the purchaser, so soon as the purchase-money is paid, of the interest of the debtor in the land sold. R. S. 1838, pp. 277, 278.—R. S. 1843, p. 751. However this matter may be (it is not necessary now to decide it), the sheriff is recognized, in his capacity of auctioneer, as the agent of the purchaser with authority to bind him, as a common auctioneer could, in the manner above stated.

The next inquiry is, has he so bound him in this cause? The only evidence on this point is the return of the sheriff indorsed on the execution. We are aware there are *dicta* that a sheriff's return, if sufficiently full and explicit in stating the terms of the contract, is a compliance with the statute of frauds, and binds the purchaser. We are not disposed to question the correctness of these *dicta*, if applied to a return made immediately upon striking off the property. Such a return may be viewed as a *memorandum* of the sale signed by the buyer through his agent; but in no other view can it be obligatory upon him, for simply as a return it can contain no evidence of a contract on his part, because in making it the sheriff acts as the agent of no one. He merely discharges the duty of his office. But how can the return, if not made at the time of the sale, be a compliance with the statute? Where is the written evidence of the contract in the mean time? Shall the contract be considered as void when entered into for the want of a note in writing, and continue so for an indefinite period until the return shall be made, and then be rendered valid by the return? We think not. Our opinion is, that a sheriff's return, setting forth a sale of land made by him on execution, to serve the purpose of a note in writing under the statute of frauds, must be made immediately upon striking off the property to the highest bidder;

and that after that time the sheriff has no authority to bind the purchaser in any manner whatever. The alleged sale in this cause was made on the 27th of *August*, 1842. The return day of the execution was the 4th of *December* following. The return given in evidence bears no date; and there was no proof when it was made, or filed in the clerk's office. We cannot presume that it was made before the return day. More than three months therefore appear to have intervened between the time of sale and the return of the execution. There was consequently no legal evidence that the defendant, *Hunt*, made any contract at the sheriff's sale which can be enforced against him. The judgment of the Court should have been in his favour.

There was another defect in the evidence. No proof was made that the sheriff offered a deed of the land bid off to *Hunt*, provided he would pay the purchase-money. This was indispensable. Had there been a sufficient note in writing to bind *Hunt*, it would have constituted evidence only of a contract to convey the purchased premises. To perfect the title a deed from the sheriff would have been necessary, the delivery of which and the payment of the money would, by law, have been concurrent acts. *Catlin* v. *Jackson*, 8 Johns. 520.

There was also an irregularity in going to trial without an issue. And the length of time for which the sheriff advertised his sale is ambiguously stated in the notice.

It should be remarked, that it is questionable whether an action at common law can be sustained by the sheriff on a contract of sale on execution effected through his own agency in the capacity of an auctioneer. It was held in *Wright* v. *Dannah*, 2 Campb. 203, and *Farebrother* v. *Simmons*, 5 B. & Ald. 333, that an auctioneer could not sue on a contract evidenced by his own memorandum of the sale, on the ground that the agent, whose signature can bind the purchaser, must be some third party, and not the other contracting party on the record. But the correctness of these decisions was doubted in the case of *Bird* v. *Boulter*, 4 B. & Adol. 443.—1 Sugd. on Vend. 107. The cases, however, were not overruled. The objection, if valid, to a common law suit, is not applicable to this form of action, which is expressly authoriz-

May Term,   ed by the statute whenever the sheriff makes a valid sale on
  1846.    execution, and the purchaser refuses to pay his bid.

PITZER          *Per Curiam.*—The judgment is reversed with costs.
  v.       Cause remanded, &c.
HARMON.
              J. T. *Brown* and *E. Dumont*, for the appellant.

              J. *Ryman* and *P. L. Spooner*, for the appellee.

