Doty *v.* Wilder.

---

THEODORUS DOTY, Appellant, *v.* BENJAMIN WILDER, Appellee.

ERROR TO COOKE.

An auctioneer is the agent of vendor and vendee, and his entry in the sale book at the time of the sale, containing a description of the property, real or personal, sold, the names of vendor and purchaser, the price and terms, signed by a person thereto authorized by both parties, is a sufficient memorandum in writing, within the intent of the statute of frauds, and binds both parties.

The memorandum of the auctioneer must on its face, or in connection with some other writing, contain every thing necessary to show the contract between the parties, so as to avoid a resort to parol proof.

An entry by a clerk, under the direction of the auctioneer, will be regarded as the act of the auctioneer.

The authority of the auctioneer need not be in writing.

A party may by parol authorize another to make a contract concerning real estate, which, if followed, will be obligatory.

THIS cause was decided by MORRIS, Judge, at May term, 1854, of Cook Circuit Court.

BLACKWELL and BECKWITH, and VAN J. HIGGINS, for plaintiff in error.

PHELPS and McGIRR, for defendant in error.

TREAT, C. J. Doty brought a suit in chancery against Wilder

on the 24th of June, 1853. The bill alleged in substance, that on the 3d of February, 1853, the defendant was the owner in fee-simple of that part of the east fraction of the north-east quarter of section twenty-one, in township thirty-nine north, of range fourteen east, beginning on the west line of Clark street one hundred and ninety-eight and seventy-five hundredths feet south of the south-east corner of block one hundred and seven, in the school section addition to Chicago, thence running south forty-two feet, thence west one hundred and seventy-four feet, thence north forty-two feet, and thence east one hundred and seventy-four feet; that on that day, J. B. F. Russell and W. F. De Wolf, doing business under the style of J. B. F. Russell & Co., were real estate auctioneers and agents, and had P. A. Hayne in their employ as salesman, and B. F. Quimby as clerk; that about that time, the defendant employed J. B. F. Russell & Co. as his agents to sell the lot in question at auction, and for that purpose gave them a description of the same; that J. B. F. Russell & Co. thereupon caused an advertisement to be inserted in a daily newspaper of Chicago, signed by P. A. Hayne as salesman, stating that a house and lot adjoining the southern depot on Clark street—lot forty-two by one hundred and seventy-four feet, and the house large and convenient for a tavern —would be sold at auction on the 3d of February, 1853, at ten o'clock, A. M.; that on that day, J. B. F. Russell & Co., by P. A. Hayne as salesman, offered the lot for sale to the highest bidder, upon the terms that one half of the purchase-money should be paid upon the execution of the necessary papers between the parties, and the other half in one year thereafter, and that the complainant became the purchaser of the lot for the sum of $4,700; that the defendant was present at the sale, and assented to the same, and the terms and conditions thereof; that at the time of the sale, J. B. F. Russell & Co. had and kept a sales book, in which it was their custom to make a memorandum in writing of every sale made by them as auctioneers, containing a description of the property sold, the time when the sale was made, the names of the seller and purchaser, the price, and the terms and conditions of sale, which book had formerly been used for the same purpose by Russell, and was headed in writing on the top of each page, " Auction sales of real estate by J. B. F. Russell," with a blank for the date of the same; that at the time of the sale, J. B. F. Russell & Co., through their clerk, B. F. Quimby, whose business it was to make such entry, made a memorandum in writing in the sales book, which, in connection with the heading on the top of the page, was as follows :—

Doty *v.* Wilder.

"Auction sales of real estate by J. B. F. Russell. — Feb. 3d, 1853.

| Description. | Owner. | Amount. | Purchaser. | Remarks. |
|---|---|---|---|---|
| House and lot adjoining Southern Depot on Clark street. | B. Wilder. | $4.700. | T. Doty. | 1-2 cash. 1-2 in 1 yr." |

That the depot of the Southern Michigan Railroad was situated on the west side of Clark street adjoining the lot, which depot was known by the name of the Southern Depot, and was so understood by the parties at the sale; that the lot adjoined the depot on the north side thereof, and was the only lot with a house upon it adjoining the depot, and the only lot owned by the defendant that adjoined the depot; that it was the known and established custom in Chicago, when sales of real estate are made at auction, and the whole or any part of the purchase-money is to be cash, that such purchase-money is to be paid when the written instruments relating to the sale are executed, and that is to be done as soon as it conveniently can be after the close of the sale, which custom was well known to all persons present at the sale, and particularly to the defendant; that the defendant informed the bidders at the time of the sale, that possession of the lot would be immediately given to the purchaser; that on the day of sale, the complainant applied to J. B. F. Russell & Co. for the execution and completion of the contract of sale, and was then ready and willing, and offered to perform every thing to be done on his part, but the matter was delayed until J. B. F. Russell & Co. could procure from the defendant his signature to the proper instrument of writing to carry out the contract on his part; that after repeatedly applying to J. B. F. Russell & Co. to have the contract executed, the complainant, on the 11th of February, 1853, tendered them $2,350, and demanded an agreement for a deed in accordance with the terms of sale; and he has ever since been and still is ready and willing to pay that sum of money, and in all things to comply with and perform the terms of the sale; and the bill prayed that the defendant might be compelled to execute an agreement to convey the lot on the payment of the purchase-money; and the complainant offered to pay the same in such manner as the court should direct. The court sustained a general demurrer to the bill; and the complainant sued out a writ of error.

It is insisted by the defendant, that the sale in question is obnoxious to the statute of frauds, and therefore cannot be enforced. Waiving the point whether it can be raised by demurrer, we proceed to consider and decide the question. So

much of our statute of frauds as has any relation to the case, is substantially a transcript of the English statute on the same subject. It was held in the case of Simon v. Motivos, reported in 3 Burrow, 1921, and 1 W. Blackstone, 599, that on a sale of goods at auction, the auctioneer was to be considered as the agent of both seller and buyer; and that his setting down in writing the description of the property, and the names of the seller and buyer and the price, was a sufficient note or memorandum to take the case out of the operation of the statute of frauds, and render the sale binding on the parties. The doctrine of that case has been followed by the English courts. Hine v. Whitehouse, 7 East, 558; Rucker v. Cammeyer, 1 Espinasse, 105. And they hold it to be equally applicable to sales of real estate at auction. Emerson v. Heelis, 2 Taunt. 38; White v. Proctor, 4 Ib. 209. The English courts of equity adopt the same rule, and apply it as well to auction sales of land as of goods. Coles v. Trecothick, 9 Vesey, 235; Blagden v. Bradbear, 12 Ib. 466; Buckmaster v. Hanoss, 13 Ib. 457; Kemeys v. Proctor, 3 Vesey & Beames, 57. The statute has received the same construction in this country, as well in respect to auction sales of real as of personal estate; and such sales stand on the same footing, both at law and in equity. McComb v. Wright, 4 Johns. C. R. 659; The Trustees v. Bigelow, 16 Wend. 28; Morton v. Dean, 13 Met. 385; Cleaves v. Foss, 4 Greenl. 1; Hawkins v. Chace, 19 Pick. 502; Hunt v. Gregg, 8 Blackf. 105; Smith v. Jones, 7 Leigh, 165; Burke v. Haley, 2 Gilman, 614; Meadows v. Meadows, 3 McCord, 458; The Trustees v. Wiley, 2 Hill, C. R. 584. The law on the subject of auction sales seems, therefore, to be well settled. The auctioneer is regarded as the agent of both vendor and vendee; and an entry made by him in his sale book at the time of the sale, containing a description of the property sold, the names of the seller and purchaser, and the price and terms of sale, is a sufficient memorandum in writing of the contract, signed by a person thereto authorized by the vendor and vendee, within the intent and meaning of the statute of frauds, and binds both parties. The memorandum of the auctioneer must, however, on its face, or in connection with some other writing, contain every thing necessary to show the contract between the parties; so that there be no need of parol proof to ascertain the terms of sale, or the intention of the parties. The entry may be made by the clerk of the auctioneer. Being done under the direction of the auctioneer, it is regarded as his act. Frost v. Hill, 3 Wend. 386; Smith v. Jones, 7 Leigh, 165; Hart v. Woods, 7 Blackf. 568; White v. Proctor, 4 Taunt. 209. The authority of the

Doty *v.* Wilder.

auctioneer need not be in writing. A party may by parol authorize another to make a contract concerning real estate; and if the agent makes a written contract in pursuance of such authority, the principal cannot insist upon the statute of frauds, but he may be charged by virtue of the contract. Merritt *v.* Clason, 12 Johns. 102; Worrall *v.* Munn, 1 Selden, 229; McWhorter *v.* McMahan, 10 Paige, 386; Hawkins *v.* Chace, 19 Pick. 502; Yerby *v.* Griggsby, 9 Leigh, 387; Johnson *v.* McGurder, 15 Missouri, 365.

Applying these principles to this case, it is free from all difficulty. It is clearly not within the operation of the statute of frauds. There is a sufficient memorandum in writing of the contract of sale. An entry was made in the sales book of the auctioneers, at the time of the sale, containing every thing necessary to show a valid contract between the parties. It states the names of the vendor and vendee, the amount of the purchase-money, and the time of payment. It also contains a sufficient description of the property. It is described as a house and lot owned by the defendant, adjoining the Southern depot on Clark street. There are references in this description, by which the lot can be identified and distinguished. The depot and street are well-known localities. The bill likewise alleges that the lot was the only one with a house upon it adjoining the depot, and that the defendant owned no other lot answering to this description. In this state of case, there could not be the least difficulty in ascertaining the precise location and extent of the lot. If the defendant had conveyed the lot by the same description, there could not be a doubt but that his grantee would hold the property. Surely no greater certainty is required in a contract of sale, than in a conveyance. The bill shows that the complainant promptly offered to perform the contract on his part; and he has a clear right to call upon a court of equity to compel its specific execution by the defendant.

The decree is reversed, and the cause remanded.

*Decree reversed.*