Johnson v. Dodge.

———————

WILLIAM F. JOHNSON, Plaintiff in Error, *v.* JOHN C. DODGE, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

Equity will decree a specific performance of a contract for the sale of land, if the proof supports a transaction which is fair.

The authority to the agent to sell land need not be in writing to take it out of the statute of frauds; and the agent may execute a contract to bind his principal, if his authority was ample, and this conduct was correct.

The power to convey land must be in writing, and of equal dignity with the act to be executed.

THIS case is a suit in chancery, brought by Johnson against Dodge, for the specific performance of a contract for the sale of forty acres of land, more or less.

John C. Dodge, being then the owner of said land, on the 4th September, 1852, by and through his agent, N. P. Iglehart, of Chicago, entered into a written agreement, signed with the name of said Dodge, by said Iglehart, as his agent, whereby it was agreed that said Dodge sold the said land to a certain Thomas C. Walters, at $30 per acre, "one-fourth in cash on the making of the deed, one-fourth in one, one-fourth in two and one-fourth in three years, with interest on the deferred payments, and to be secured by mortgage; that the deed should be made to Wal-

ters or his assigns, and the sale should be closed by both parties within five days from the said 4th September, 1852, and that the sum of $50 was paid down by said Walters to Iglehart." The bill further states, that Walters in all things complied with the terms of said agreement, by offering to pay to Dodge the balance of the first payment, and demanded from him a deed according to said agreement, and offered, on receipt of the deed, to make the mortgage agreed upon, but that Dodge refused to accept the money or to convey the premises, alleging, as an excuse, that the land was worth more than $30 an acre; that on the 13th September, 1852, Walters sold and transferred said agreement to William F. Johnson, the complainant; that about the 6th of September, 1852, Dodge left Chicago, and was absent till about 14th; that on that day, the complainant tendered and offered to pay said Dodge, at his office in Chicago, the said balance of the first payment, demanded of him a deed, and offered to execute the mortgage as aforesaid, on receipt of the deed, but that Dodge refused, stating that the land was worth more than $30, though that was a fair price for it at the time. The complainant states, he is ready to comply with his portion of said agreement, in all respects, and that after Iglehart had made the sale and entered into the written agreement, he reported the fact of the sale to Dodge, by sending a memorandum in writing to him by his, Iglehart's, clerk, on or about the 6th of September, aforesaid, and that Dodge told the clerk the sale was all right, and he would attend to it. And further, that Iglehart, as agent for Dodge, since said 4th of September, has sold large quantities of other lands, in a similar manner, for said Dodge, reported them to him, and that Dodge recognized and carried out all said contracts, except the one in question. The bill then prays for a specific performance, &c.

The defendant denies that on the 4th day of September, 1852, he entered into the aforesaid agreement, by his duly authorized agent, N. P. Iglehart; says that he never appointed said Iglehart his agent, to sell or dispose of said land, as his agent, and that the contract was made without his authority; denies that he received the sum of $50, as part of first payment through said Iglehart, and that he ever received any money whatever, on account of said sale, and that if said Iglehart received it and receipted for it, it was done without his authority. Defendant denies that Walters, at any time, offered to pay the balance of first payment, and demanded a deed, and offered to execute a mortgage, or that he, the defendant, refused to accept the said balance of first payment, and convey said premises to Walters, or receive a mortgage from him; denies that he alleged as an excuse he thought the land was worth more

than $30, the amount it was sold for, and says he is unacquainted with Walters, and never has seen him. Defendant says he is wholly ignorant of the transfer of said agreement by Walters to Johnson; denies that he left Chicago on the 6th September, 1852, and was absent until 14th, and says that he was in the city of Chicago from the 13th August till 17th September, and was, during business hours, in his office, and could have been seen by Walters; denies that the complainant, on 14th September, offered to pay him at his office, the balance of the first payment, or that he demanded of him a deed, and offered to execute a mortgage, or that he alleged, as an excuse for his refusal to comply with said offer, that the land was worth more than $30 per acre. Defendant denies that the price of $30 was a fair price at the time of the pretended sale. As to that part of the bill alleging an offer to pay the balance of the first payment, defendant says, he admits that about 14th day of said September, a person, who was a stranger to him, called upon him at his office in Chicago, and presented or offered to him a sum of money, how much he is unable to say, saying that said money was for land sold by him, the defendant, without specifying what land, or to whom the same had been sold, or for whom and by whose authority said money was offered, and desired him, the defendant, to fulfill his contract for the sale of said land, without specifying what contract or in what manner a performance thereof was required; and the defendant told the person he had sold no lands, and if any lands belonging to him had been sold, they had been sold without his authority. Defendant admits, that about 6th September, 1852, he found at his office a note or memorandum, in writing, left by whom, he does not know, purporting to be written by Iglehart, to the effect that the land described in the bill, had been sold, but denies he received it from Iglehart's clerk, and that he told said clerk, or any other person, that said sale was all right, and he would attend to it, but says, that immediately on receiving said note, he returned it to Iglehart with a statement indorsed thereon, in substance, that if any sale of said land had been made, it was improperly made, and without his authority. Defendant says, that about 8th September, he received a letter from Iglehart, by a person he supposed to be a clerk of Iglehart's, stating that said land had been sold to one Thomas C. Walters, and requesting him, defendant, to execute a deed, pursuant to such sale; that he was indignant the sale should be persisted in, and said to the bearer of said letter, that he should like to know by what authority Mr. Iglehart had been selling his land, and that he would see to it, or some words to that effect. Defendant says, on same day he called on Iglehart,

at his office, and does not remember whether he found him there or not, but on the same or succeeding day, as soon as he could find Iglehart, he again reminded him that no authority had been given him for any such sale, and desired Iglehart not to cause him any further trouble about it. That said Iglehart admitted said sale was unauthorized, expressed much regret it had taken place, and promised defendant he would see Walters and have the sale rescinded; that defendant asked where he might see said Walters, so that he, defendant, might personally communicate to him the fact that said sale was unauthorized, and have it abandoned; that said Iglehart stated, Walters was then absent from Chicago, and he, Iglehart, would see him in respect thereto. Defendant says, about 14th September, and immediately after the offer of the sum of money before referred to, he again called upon Iglehart, and Iglehart told him he had seen him, Walters, offered to pay $150 from his own pocket, to abandon the sale, and that Iglehart assured the defendant that the sale should be abandoned by Walters. Defendant denies that Iglehart, as his agent, has, since the 4th of September, 1852, sold large quantities of other lands for him, or that he recognized or carried out such sales, and says, that in all the transactions and sales referred to, Iglehart had authority to receive propositions and offers for said lands, and report the same to the defendant, to receive and give effect to such propositions and offers, by making and perfecting a sale of said lands in pursuance thereof, or to reject the same as he might think proper; that Iglehart never, as defendant's agent, or with his knowledge or consent, signed any agreement for the sale of such other lands, but in all things left defendant free to act in the premises as he might think proper; that all the agreements or instruments in writing, respecting such sales, were signed by defendant with his own proper hand. In answer to interrogatory in the bill, "whether the defendant did not leave a description of said land in said agreement specified, with said N. P. Iglehart, and authorize and request him to sell the same at the price and on the terms specified in said agreement," defendant says, he did not leave a description of said land with said Iglehart, or authorize or request him to sell the same on said terms, or any other, nor for the price of $30 per acre, as specified in the writing to Walters. For further answer to interrogatories put in the bill, defendant says, in substance, that about 11th August, 1852, he was called on by Iglehart, till that time a stranger to defendant, and asked by him if certain lands, including that in question, were for sale, and defendant told him they were not. Defendant says, subsequently, and on the succeeding day, Iglehart called on defendant at his office, and asked him

what lands he had for sale; that defendant designated to him on a map of the city of Chicago, certain lands he might be willing to sell, but the land in question was not among them, nor was any authority then given to Iglehart to sell the lands so designated, or any portion of them. Defendant did not see Iglehart from the time of this interview, nor had he any further communication with him respecting said lands, until he received the note or memorandum before referred to, stating that the land in question had been sold. Defendant claims that the authority charged in the bill to have been given by him to Iglehart to sell the lands mentioned, was not in writing and signed by defendant as required by Statute of Frauds and Perjuries, and that the agreement set forth in the bill as made by said Iglehart as his agent, was not signed by said Thomas C. Walters, and could not be enforced against said Walters, and for that reason said agreement is not binding upon the defendant, and that the offers and tenders made were not made in pursuance of and according to the terms of said agreement. Defendant insists he is discharged from the contract by reason of the non-performance of the several conditions therein to be performed by said Walters, and by reason of the insufficiency of the tenders.

Iglehart deposes, that he was employed to sell the land in question; about the 12th August, 1852, he was employed to get offers, or to see at what price he could find a buyer for the land, and to report the same to Dodge. About the 3rd of September following, he reported a bid of $25 an acre; Dodge declined that offer, and stated his price at $30 per acre, as the lowest— one-fourth cash, and the balance in one, two and three years. These limits and the terms named, he entered at once on his book. Deponent says, in communicating to Dodge the offer of $25 per acre, he told him it was for the piece of land in question; and that it was in his hands at that time, for a given price. The piece of land was placed in his hands by Dodge about the 12th of August, to get bids for. He says the offer of $25 per acre was not made by him to Dodge for himself, but carrying out his agency for Dodge. On the 12th August, at the time the piece of land in question was placed in his hands, another piece was placed there, like the other, to get bids for. About 3rd September, 1852, in reporting the offer of $25 per acre, previously named, and at that time Mr. Dodge placed a limit on the other lot, of $140 per acre, and of $30 per acre on this one now in question, and authorized him to sell these respective pieces at those prices. Deponent says, he sold the land in question on the 4th September, 1852, to Thomas C. Walters, at $30 per acre—one-fourth to be paid in cash on the execution of

the deed, the balance in equal annual payments, in one, two and three years, secured by mortgage for the deferred payments, and received from said Walters $50 on account of the first payment, which $50 he placed to the credit of said Dodge on his books, charged him with $30, being two and one-half per cent. commission on $1,200, the amount of the sale. Deponent says, he gave Walters a contract of sale, dated September 4th, 1852; says the contract with Walters is in his, the deponent's, hand-writing; is signed by him in the name of N. P. Iglehart & Co., as agents for Mr. John C. Dodge for the sale of the piece of land described in the contract; said contract was assigned some few days after the 4th of September, the exact date not remembered, to William F. Johnson, by said Walters. Deponent thinks it was on a separate piece of paper, and that he wrote the assignment himself. Deponent communicated the sale of the land in question to Mr. Dodge on the day it was made, viz.: the 4th September. This communication was verbal, but deponent made another communication of said sale on the 8th September, 1852, in writing. At the time of making the communication on the 4th September, deponent asked Mr. Dodge for his papers of title, so that he could draw the proper papers, and have the sale closed. Mr. Dodge was very busy, it being Saturday, and asked deponent to let it remain until Monday, the 6th September, that is, the furnishing of the title papers. After the receipt of the letter of 8th September, Mr. Dodge called at deponent's office on the 9th of September, or perhaps on the evening of the 8th. He called to complain somewhat of deponent's letter to him, acknowledging its receipt. Deponent explained it to him, telling him, that his not furnishing his title papers on Monday, the 6th September, 1852, had caused Mr. Walters to feel angry, and disposed to give deponent as much trouble as he could, unless the papers were immediately executed by Dodge to him, and to close the matter, if possible, was the reason deponent had written to him on the 8th. Dodge still appeared angry, principally on account of the remarks in deponent's letter, which he deemed harsh towards him, and declined rather at that interview, to execute the papers or furnish them to deponent, by which to draw the proper papers. Deponent remonstrated with him in a general conversation, and stated that he had had the property in charge, since about the 12th August, 1852; that on the 3rd of September, he, Dodge, had placed it with him, deponent, specifically for sale, at thirty dollars an acre, and authorized him to sell it at that price, and no less. Deponent referred also in the conversation to his, Dodge's, confirming the sale on Saturday, the 4th September, when he reported it to him, and of his promise to furnish him

the title papers on the following Monday; and also to the fact that he, deponent, had issued a contract for this property, as his agent, and had received $50 on the same. Deponent urged Dodge to close it up and settle. He declined, and went off rather angry. About the 17th of September, 1852, he, deponent, reported another sale of Mr. Dodge's property left by him with deponent, which Mr. Dodge confirmed and signed the contract, and then referred to the land in question, in a milder tone than before, stating he wished deponent to settle it in some way for him; that somebody had made him a tender in gold, some pert young man, he said, and wanted deponent to tell him who it was. He also said he thought the property ought to bring more, and if deponent would get him out of this scrape, he would still let him have the selling of this and of some other property he had for sale; that he wished to purchase some good property, and wished deponent to attend to all his land matters as he would report them to him. Deponent does not remember having any other conversation with Dodge, until about 1st October, 1852, when Dodge handed him some other pieces of property for sale; and also, at that time, he gave him for sale this same forty acres in dispute, limiting it at $50 per acre. There was some little conversation about this forty acres and the affair with Walters. Dodge wished deponent, if possible, to settle it for him. Deponent expressed a willingness to do so, if he could, and told him he had no control of it in any way, and especially referred to the fact that the matter was then placed in the hands of Morris, Hervey and Clarkson, and had been assigned to Johnson, but was willing to do any thing he could. Deponent urged Dodge to see Mr. Morris himself, as he was an old acquaintance, with whom he thought the best arrangements could be made in the matter. About the 13th October, ensuing, Dodge placed other property in said Iglehart's hands for sale, amounting to $10,000, and spoke again of this matter, but had not been able to arrange. Deponent and Dodge, from that time to about the 1st January, 1853, had brief conversations as they met from time to time, on business, deponent having sold for him during that time some $10,000 worth of property. Deponent and Dodge learned from each other, that both were unable to effect a compromise. On 13th January, 1853, deponent and Dodge had their last interview on this subject, at least in an amicable way. Dodge said he had learned that some legal process had been or was about to be instituted against him, at which he expressed himself angrily, and withdrew all property of his, on deponent's books for sale, and told deponent his agency for him had ceased, and spoke of reducing that revocation of agency to writing, which deponent told him it was not

necessary for him to do. Deponent does not remember the exact amount in gold Dodge said was tendered him. Dodge spoke of some pert young man having called on him with gold in his hand, wishing him to take it, in payment for some land sold Walters by Iglehart. Dodge said in substance, that he told the young man that he did not want his gold, and he had better put it in his pocket and go away. The time was about subsequent to the 8th of September, 1852, say from three to ten days. Dodge named it to deponent about the time it occurred. Dodge did not question Iglehart's authority on the 4th September, when he reported the sale, but fully confirmed, stating that on the following Monday, 6th September, he would furnish his title papers to draw the suitable papers to Walters. In a conversation after the reception of Iglehart's note of 8th September, Dodge expressed it as his opinion, that his, deponent's, agency or the contract he had signed, would not hold him. From that time to the 13th January, 1853, when Dodge withdrew his property from deponent's office, Dodge never disputed his authority. Deponent told Dodge, during the fall of 1852, that if he would arrange the matter some way, he, deponent, would give $100 and his commission on the sale ; giving, as a reason, that that was the only instance where sales made by deponent had not been consummated, and he would sooner give what he had made out of Dodge's subsequent business, than have a thing of the kind unclosed. A few days subsequent to the 4th September, William F. Johnson, the complainant in this case, tendered to deponent, as agent for John C. Dodge, $250 in gold, in payment for said forty acres. The tender was made after the assignment to Johnson, and deponent thinks on the same day.

The bill was dismissed by WILSON, Judge, at January term of the Common Pleas Court, and thereupon the complainant brought this writ of error.

B. S. MORRIS, and WALLER and CAULFIELD, for Plaintiff in Error.

I. N. ARNOLD and H. G. MILLER, for Defendant in Error.

SKINNER, J. This was a bill in equity, for specific performance of a contract for the sale of land.

The bill and proofs show that one Iglehart, a general land agent, executed a contract in writing in the name of Dodge, the respondent, for the sale of certain land belonging to Dodge, to one Walters, and received a portion of the purchase money ; that Walters afterwards assigned the contract to Johnson, the

complainant; a tender of performance on the part of Walters, and on the part of Johnson, and a refusal of Dodge to perform the contract. The answer of Dodge, not under oath, denies the contract and sets up the statute of frauds as a defence, to any contract to be proved. The evidence, to our minds, establishes a parol authority from Dodge to Iglehart to sell the land, substantially according to the terms of the writing. It is urged against the relief prayed, that Iglehart, upon a parol authority to sell, could not make for Dodge a binding contract of sale, under the statute of frauds; that the proofs do not show an authority to Iglehart to sign the name of Dodge to the contract, and therefore that the writing is not the contract of Dodge; that the writing not being signed by the vendee is void for want of mutuality; that no sufficient tender of performance on the part of complainant is proved, and that the proof shows that the authority conferred was not pursued by the agent. Equity will not decree specific performance of a contract founded in fraud, but where the contract is for the sale of land, and the proof shows a fair transaction and the case alleged is clearly established, it will decree such performance.

In this case, the contract, if Iglehart had authority to make it, is the contract of Dodge and in writing; and it is the settled construction of the statute of frauds, that the authority *to the agent* need not be in writing, and by this construction we feel bound. 1 Parsons on Con. 42, and cases cited; *Doty* v. *Wilder*, 15 Ill. 407; 2 Parsons on Con. 292, 293, and cases cited; Saunders' Pl. and Ev. 541, 542 and 551; Story on Agency 50; 2 Kent's Com. 614. Authority from Dodge to Iglehart to sell the land, included the necessary and usual means to make a binding contract in the name of the principal. If the authority to sell may be created by parol, from this authority may be implied the power to use the ordinary and usual means of effecting a valid sale; and to make such sale it was necessary to make a writing evidencing the same. If a party is present at the execution of a contract or deed, to bind him as a party to it, when his signature is affixed by another, it is necessary that the person so signing for him should have direct authority to do the particular thing, and then the signing is deemed his personal act. Story on Agency 51. In such case the party acts without the intervention of an agent and uses the third person only as an instrument to perform the mere act of signing. This is not such a case. The agent was authorized to negotiate and conclude the sale, and for that purpose, authority was implied to do for his principal what would have been incumbent on the principal to do to accomplish the same thing in person. *Hawkins* v. *Chance*, 19 Pick. 502; 2 Parsons on Con. 291; Story on

Agency, Chap. 6; *Hunt* v. *Gregg*, 8 Blackf. 105; *Lawrence* v. *Taylor*, 5 Hill 107; 15 Ill. 411; *Vanada* v. *Hopkins*, 1 J. J. Marsh. 283; *Kirby* v. *Grigsby*, 9 Leigh 387.

The mode here adopted was to sign the name of Dodge "by" Iglehart, "his agent," and it is the usual and proper mode in carrying out an authority to contract conferred on an agent. But if the signing the name of the principal was not authorized by the authority to sell, yet the signature of the agent is a sufficient signing under the statute. The language of the statute is, "signed by the party to be charged therewith, or some other person thereto by him lawfully authorized." If Iglehart had authority to sign Dodge's name, then the contract is to be treated as signed by Dodge; and if Iglehart had authority to sell, in any view, his signature to the contract, is a signing by "some other person thereto by him lawfully authorized," within the statute. *Truman* v. *Loder*, 11 Ad. and El. 589; 2 Parsons on Con. 291. It is true that authority to *convey* must be in writing and by deed; for land can only be conveyed by deed, and the power must be of as high dignity as the act to be performed under it. It was not necessary to the obligation of the contract that it should have been signed by the vendee. His acceptance and possession of the contract and payment of money under it, are unequivocal evidences of his concurrence, and constitute him a party as fully and irrevocably as his signing the contract could. 2 Parsons on Con. 290; *McCrea* v. *Purmort*, 16 Wend. 160; *Shirly* v. *Shirly*, 7 Blackford 452.

We cannot question the sufficiency of the tender in equity, to entitle the complainant to specific performance. *Webster et al.* v. *French et al.*, 11 Ill. 278. Nor do we find any substantial departure in the contract from the authority proved. While we hold that the authority to the agent who for his principal contracts for the sale of land, need not be in writing, yet we should feel bound to refuse a specific performance of a contract made with an agent upon parol authority, without full and satisfactory proof of the authority, or where it should seem at all doubtful whether the authority was not assumed and the transaction fraudulent.

Decree reversed and cause remanded.

*Decree reversed.*