William Sear, Plaintiff in Error, v. Thomas A. Moore, Defendant in Error.

Gen. No. 16,857.

1. AGENCY—*when lease sufficiently signed by real estate agents as agents.* Where real estate agents are verbally authorized by the owner of premises to sign leases thereof, a lease signed by a manager of the agents' renting department in the owner's name by "M. & P. agents" is a signing by the agents as agents for the owner, when such manager is authorized to sign landlords' names by them as agents.

2. STATUTE OF FRAUDS—*when lease not within.* A lease prepared and signed for the owner by a verbally authorized agent and signed and delivered to the agent by the lessee, is not unenforceable in an action for rent, though not to be performed within a year of the signing.

3. STATUTE OF FRAUDS—*when lease not within section one.* A lease though not to be performed within a year of the making may be executed by a verbally authorized agent.

4. STATUTE OF FRAUDS—*when lease not within section two.* A lease for one year though signed by the lessee and by a verbally authorized agent of the lessor some time before it was to go into operation is not unenforceable by the lessor under the statute relating to frauds and perjuries section 2, because the agent was not authorized in writing, since the term of the lease is not for more than a year.

Error to the Municipal Court of Chicago; the Hon. W. W. DIETERICH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed October 3, 1912.

P. H. BISHOP, for plaintiff in error.

ALBERT H. MEADS, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

William Sear, plaintiff in error and hereinafter called plaintiff, caused judgment to be entered by confession against Thomas A. Moore, defendant in error

and hereinafter called defendant, in the Municipal
Court of Chicago, on May 14, 1910, for the sum of
$373, for rent reserved in a written lease of an apart-
ment in a building owned by plaintiff, for the full term
of said lease, from May 1, 1909, to April 30, 1910,
amounting to $348, together with $25 attorney's fees.
Subsequently, by stipulation of the parties, the judg-
ment was vacated, and the cause was tried before the
court without a jury. The court found the issues for
the defendant and judgment was entered accordingly.
This writ is prosecuted to reverse that judgment.

The material facts are as follows: The defendant
was a tenant of plaintiff, occupying said apartment
under lease expiring April 30, 1909. Prior to March,
1909, plaintiff called on Fred. A. Gates, manager of the
renting department of McKey & Poague, real estate
agents in Chicago, and stated that he wished McKey &
Poague to take full charge of his apartment building,
make repairs, collect rents and make leases. Gates
agreed, on behalf of his employers, to do this, notified
defendant of the fact, and from then on defendant paid
the rent to McKey & Poague, as agents of plaintiff, for
the apartment he was occupying under said lease ex-
piring April 30, 1909, including the April, 1909, rent.
During March, 1909, Gates prepared a draft of a new
lease for defendant to sign, which draft was in the
form commonly in use and which demised the same
apartment to defendant for the period of one year,
commencing May 1, 1909, and which contained mutual
covenants, and mailed same to defendant unsigned.
Shortly thereafter defendant personally signed said
instrument and delivered it to Gates. Thereupon
Gates signed plaintiff's name thereon, as follows,
"Wm. Sear, by McKey & Poague, Agts." Prior to
April 30, 1909, defendant again called on Gates and
informed him that he desired to be released from the
lease in question. Gates said he had no authority to
release defendant and told defendant to see plaintiff,

the owner. Defendant then asked Gates if the latter could not rent the apartment to some one else. Gates replied that he would try and do so, caused a "To Rent" sign to be placed on the premises, and, as he testified, "did what he could to rent the apartment." He did not succeed in doing so, however, and the apartment remained vacant from the time defendant moved out (which was immediately prior to the expiration of the old lease) until after April 30, 1910. Shortly after defendant asked to be released from the lease in question, defendant, following Gates' suggestion, called on plaintiff, the owner, and repeated his request to be released, and plaintiff replied that before giving defendant an answer he (plaintiff) would have to consult his son-in-law. The record does not disclose that plaintiff at any time, either verbally or in writing, released defendant from the obligations of the lease, nor does it disclose that Gates, or any other representative of Mc-Key & Poague, at any time did so. It was admitted at the trial that no part of the rent reserved in the lease had been paid by defendant. Gates testified that during July, 1909, he telephoned defendant and asked him for the rent then due; that defendant said that plaintiff had released him, and Gates replied that he had seen plaintiff and that plaintiff had said that plaintiff had not released defendant; and that Gates, on two or three subsequent occasions, telephoned defendant and demanded payment of rent. The defendant, at the trial, denied having any of these telephone conversations with Gates, and testified that the first demand on him for rent was made in December, 1909, by an attorney of plaintiff.

While plaintiff did not in writing authorize McKey & Poague to sign the lease in question, we are of the opinion that the record sufficiently discloses that he verbally authorized them so to do, and that the signing of the lease in the manner above described by

Gates, who was in charge of the renting department of McKey & Poague and who was accustomed to sign "landlords' names to leases by McKey & Poague as agents," was a signing by McKey & Poague, as agents of plaintiff, verbally authorized.

It was contended at the trial by counsel for the defendant (and the trial court seemingly agreed with the contention) that the lease in question, being an agreement which was not to be performed within the space of one year from the making thereof, and which was not signed either by the plaintiff or some other person thereunto by him lawfully authorized *in writing*, was not enforceable against the defendant under Section 1 of our act "in relation to Frauds and Perjuries." Counsel here urges the same point as a reason why the judgment should be affirmed.

We cannot agree with counsel because, first, the lease was signed by the party sought "to be charged" in this action and he was not released. The evidence shows that Gates drafted the lease, mailed it to defendant and the latter signed it and delivered it to Gates, who accepted it on behalf of plaintiff and acted upon it. The defendant made it his deed, thereby estopping himself. (Johnson v. Crane, 22 Ill. App. 366; Bowman v. Powell, 127 Ill. App. 114.) "In England, and generally in the United States, the only signature made necessary by the statute is that of the party against whom the contract is sought to be enforced." (20 Cyc. 272; Raphael v. Hartman, 87 Ill. App. 634, 637; Farwell v. Lowther, 18 Ill. 252; Esmay v. Gorton, 18 Ill. 483; Gradle v. Warner, 140 Ill. 123, 135; Ullsperger v. Meyer, 217 Ill. 262, 271.) "And the rule that the writing must be signed by the party to be charged is applicable to a lease, and the statute is satisfied when the lessee signs and the lessor accepts." (29 Am. & Eng. Enc. Law (2d Ed.) 860.) And we cannot agree with counsel for the further reason that, assuming for the sake of the argument only, that it

was necessary that the lease be also signed by the plaintiff, or his agent "lawfully authorized," it was so signed by said agent under *verbal* authority, and such authority is sufficient under Section 1 of said act. And, in our opinion, Section 2 of said act, which requires the agent's authority to be *in writing,* cannot be applied to the facts in this case to aid counsel in his contention. It is the law that "in the absence of a statutory provision to the contrary, an agent's authority to sign a memorandum of a contract within the statute of frauds is not required to be in writing any more than in any other case of agency." (20 Cyc. 276; Doty v. Wilder, 15 Ill. 407; McConnell v. Brillhart, 17 Ill. 354; Johnson v. Dodge, 17 Ill. 433; Lake v. Campbell, 18 Ill. 106; Tibbetts v. West, etc., Ry. Co., 153 Ill. 147, 154.) There is no "statutory provision to the contrary" in Section 1 of our present act. That section provides:

"That no action shall be brought, whereby to charge * * * any person * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

This section does not say that the "some other person" shall be lawfully authorized *in writing* to sign the agreement or memorandum, which is "not to be performed within the space of one year from the making thereof." Section 2 of said statute provides:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully

authorized *in writing, signed* by such party.     *     *     *"

This section does say that, upon any contract for the sale of lands, or any interest in or concerning them, for a longer term than one year, the "some other person" shall be lawfully authorized "in writing." But this Section 2, under counsel's contention, is not applicable to the facts in this case. The lease in question was an agreement which was "not to be performed within the space of one year from the making thereof." It was signed by the defendant and accepted and signed by Gates under verbal authority from plaintiff during March, 1909. The term of the lease was one year and was to end on April 30, 1910. It has been repeatedly decided in this state that a verbal agreement, by which a party agrees to lease certain premises for a term of one year—the term to end more than one year after the making of the agreement—is unenforceable, under Section 1 of said act. Olt v. Lohnas, 19 Ill. 576; Comstock v. Ward, 22 Ill. 248; Wheeler v. Frankenthal, 78 Ill. 124; Cooney v. Murray, 45 Ill. App. 463; Rader v. Huffman, 125 Ill. App. 554. In Olt v. Lohnas, *supra,* it was decided that the language of a portion of the then existing act, practically identical with Section 1 of the present act, applied to agreements concerning land, although there was "another member of the section providing for contracts concerning an interest in land and allowing parol leases for lands for *a term of one year or less.*" It has also been decided that a leasehold is an "interest in or concerning" lands (Chicago Attachment Co. v. Davis Co., 142 Ill. 171, 180), and that, in suits between landlord and tenant, this Section 2 of the act includes leases of terms for *more than a year.* (Lake v. Campbell, 18 Ill. 106; Strehl v. D'Evers, 66 Ill. 77; Creighton v. Sanders, 89 Ill. 543; Chicago Attachment Co. v. Davis Co., *supra;* Marr v. Ray, 151 Ill. 340; Leavitt v. Stern, 159 Ill. 526.) The *term* of this lease was not for "more than a year." Therefore, Section 2 cannot be

applied to aid counsel in his contention. And under Section 1, as we have seen, the agent may be authorized verbally. We are aware of the decisions of our Supreme Court, such as Rogan v. Arnold, 233 Ill. 19, that where a lease, or a covenant for a renewal contained in a lease, for a term longer than one year, was sought to be enforced, and the lease was executed in the lessor's name by a third person, written authority from the lessor to such third person so to execute the lease must be shown.

For the reasons indicated, the judgment of the Municipal Court is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*