ROBERT D. SIMS *et al.*, Coexecutors of the Estate of Lucille Sims, Plaintiffs-Appellants and Cross-Appellees, v. DALE BROUGHTON, Defendant-Appellee and Cross-Appellant.

Fifth District   No. 5—91—0052

Opinion filed March 23, 1992.

David Y. Eberspacher, of Heller, Holmes, Hefner & Eberspacher, Ltd., of Mattoon, for appellants.

Michael P. Kiley, of Dove & Dove, of Shelbyville, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Plaintiffs, Robert D. Sims and Ronald C. Sims, coexecutors of the estate of Lucille Sims (Robert Sims and Ronald Sims were substituted as plaintiffs following the death of Lucille Sims, the sole

owner of the real estate herein involved at the time of the filing of this lawsuit), appeal the circuit court's order granting the defendant's, Dale Broughton's, motion to dismiss their complaint pursuant to section 2—619(a)(7) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(7)). On appeal, the plaintiffs contend that the court erred in granting the defendant's motion to dismiss their complaint on the grounds that they had an unenforceable contract under the Statute of Frauds (Ill. Rev. Stat. 1989, ch. 59, par. 2). We affirm.

It is well established that, in reviewing a court's dismissal of a complaint, an appellate court must take all well- and properly pleaded facts as true. (*Sturm v. Block* (1979), 72 Ill. App. 3d 306, 390 N.E.2d 912.) The facts obtained from a review of the pleadings and other supporting materials (primarily affidavits) contained in the record are as follows: The plaintiffs offered a parcel of real estate containing 35.74 acres, referred to as tract I, for sale at a public auction on March 8, 1989. Two other parcels of real estate, tract II and tract III, were also offered for sale at this auction. A handbill advertising the public auction had been distributed prior to the sale. In the handbill, the legal description of each of the parcels of real estate was given, and the terms of the sale were stated. The terms for the sale were listed as follows:

> "10% down day of sale, balance in 30 days or when deed and abstract are brought up to date. Each tract will be sold separately to the highest bidder for a final sale. Buyers will receive a title policy."

The defendant attended the auction and was the highest bidder for tract I. According to the plaintiffs, the defendant bid $1,800 per acre, for a total price of $64,332. The auctioneer accepted the defendant's bid, and after the sale, the defendant was requested to execute an agreement for the purchase of the property "pursuant to the terms and conditions of the sale bill and announcements made at the sale." The defendant refused to sign the agreement for the purchase of the property. Subsequently, plaintiffs made demands upon the defendant to complete the purchase of tract I, but the defendant continued to refuse to do so. Later, in September or November 1989, the plaintiffs sold tract I to Agri-Serve, Inc., for $1,275 per acre. In their complaint, the plaintiffs sought damages for the difference in the sale price and the price bid by the defendant plus costs.

In support of the plaintiffs' complaint, they filed the affidavits of Gordon Price, Paul Stone, and Leon Lane. In Gordon Price's af-

fidavit, he stated that he has been engaged in the auction of real estate for many years, and he is familiar with the custom and practice of such auctions. On March 8, 1989, he conducted the public auction of the plaintiffs' three parcels of real estate. At that auction, the defendant bid $1,800 per acre for tract I as described in the handbill advertising the auction. Price accepted the bid of defendant as the highest bid and announced that tract I was "sold" to the defendant for $1,800 per acre. Immediately after accepting the defendant's bid, Price wrote the defendant's name on his (Price's) copy of the handbill. After the sale of tract II and tract III, he also wrote the names of the purchasers of these parcels on this same document. Subsequently, Price threw away his handbill on which he had noted the names of the purchasers, believing this document to be of no use or import. A copy of the handbill without Price's notations was attached to Price's affidavit as an exhibit.

Paul Stone stated in his affidavit that he was the attorney for the plaintiffs for the sale of the real estate. Stone's affidavit revealed that the plaintiffs had arranged for the public auction of the three tracts of real estate, and that Gordon Price had prepared, posted and distributed the handbill advertising the sale. Stone stated the terms of the sale were included on the handbill.

Prior to the sale of the real estate on March 8, 1989, Stone prepared a written agreement for the sale of real estate for each of the three tracts being sold, and these agreements were available for review before the commencement of the sale on that date. Stone was present at the sale, he heard Price announce the terms of the sale as they were stated on the handbill, and he himself repeated the terms of the sale. Stone announced that the buyers were to sign a written agreement for sale of the real estate at the conclusion of the auction.

According to Stone, Price announced that tract I was being sold and that the property was being sold by the acre. Although there were several initial bidders for tract I, the defendant was the highest bidder with $1,800 per acre. The defendant's bid was received and accepted by Price. When Stone approached the defendant to ascertain his name to place on the written agreement, the defendant stated to Stone that he thought he "got a bargain." Stone advised the defendant that his bid was $1,800 per acre, then Stone left to attend to the sale of the other two tracts of real estate.

At the conclusion of the auction, Stone filled in the blanks on the written agreement for the sale of tract I, and the plaintiffs signed the document. The blanks on the agreements for tracts II

and III were filled in and the purchasers and the plaintiffs signed these documents. However, the defendant refused to sign the written agreement for the sale of tract I, stating that he did not bid $1,800 per acre. The written agreement prepared by Stone for tract I, with the blanks filled in, was attached to Stone's affidavit as an exhibit.

A third affidavit by Leon Lane was also filed by the plaintiffs. In his affidavit, Lane stated that he has been engaged in the profession of auction sales since 1954. Lane further stated that he is familiar with the custom and practice of the manner in which sales of real estate are conducted, and that it is not the custom and practice of auctioneers to sign written agreements or written purchase offers on behalf of a bidder in the course of the auction.

The defendant moved to dismiss the plaintiffs' complaint claiming that the plaintiffs had no cause of action based upon the Statute of Frauds (Ill. Rev. Stat. 1989, ch. 59, par. 2). In the defendant's motion to dismiss, he stated that there was no written contract or memorandum signed by the defendant or a person authorized by the defendant to make the plaintiffs' claim enforceable.

Following a hearing on the defendant's motion to dismiss, the court granted the defendant's motion. In the court's written judgment entered on January 3, 1991, the court found that the transaction between the plaintiffs and the defendant falls within the purview of the Statute of Frauds, and that the transaction was not evidenced by a written contract or memorandum. The court further found that the transaction was unenforceable under the Statute of Frauds and dismissed the plaintiffs' complaint with prejudice.

The plaintiffs appeal the court's order granting the defendant's motion to dismiss, contending that, when the handbill upon which Price noted the defendant's name and the written agreement for sale of real estate are considered together, these documents satisfy the requirements for a written contract, thereby taking the transaction out of the Statute of Frauds.

The Statute of Frauds provides in pertinent part as follows:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." (Ill. Rev. Stat. 1989, ch. 59, par. 2.)

From the foregoing, it is clear that some written document must be signed by the defendant or by his authorized agent in order to enforce a contract for the sale of real estate. Further, the document signed must contain a description of the property sold, the names of the seller and purchaser, and the price and terms of the sale. (*Doty v. Wilder* (1854), 15 Ill. 407.) The purpose of including this information in the written document is to eliminate the need for parol evidence to ascertain the terms of the sale or the intention of the parties. *Doty v. Wilder* (1854), 15 Ill. 407.

██ The court in *Doty* stated that an auctioneer is considered an agent for both the seller and the purchaser, and thus, a document signed by the auctioneer on behalf of the purchaser, if it contains the necessary information, binds the purchaser to the contract. (*Doty v. Wilder* (1854), 15 Ill. 407.) Additionally, it has been held that the written contract may consist of several documents. (*Jones v. Olsen* (1980), 80 Ill. App. 3d 1016, 400 N.E.2d 665.) If the contract is to be ascertained from more than one document, the signed writing must refer expressly to the unsigned writing or writings, or the several writings must be so connected, either physically or otherwise, that it may be determined by internal evidence that they relate to the same contract. *Jones v. Olsen* (1980), 80 Ill. App. 3d 1016, 400 N.E.2d 665.

Here, the plaintiffs assert that the handbill upon which Price, the auctioneer and the defendant's agent, placed the defendant's name, is a written document signed by the defendant. The plaintiffs further argue that this handbill contained the legal description of the property, the terms of the sale, and the names of the seller and the purchaser, and when this handbill is viewed in conjunction with the unsigned written agreement, which contained the legal description and the total purchase price ($64,332), these documents satisfy the intent of the Statute of Frauds and the contract for the sale of tract I is enforceable against the defendant.

██ We find plaintiffs' argument that the two documents are sufficient proof of the transaction to be without merit. First, the document upon which the auctioneer placed the name of the defendant was not a document that can be connected to the written agreement for the purchase of the sale of the real estate. There was nothing in the language contained in the handbill which referred to the written agreement for the sale of tract I which would provide the internal evidence that it related solely to the same contract. Furthermore, the purpose of the handbill was to advertise the sale, and it was not prepared with the view that it should be evidence of

a binding contract. Second, the actual handbill upon which Price had noted the defendant's name (and the other two purchasers' names as well) was unavailable and could not be produced. This document had been discarded by Price, thereby giving further substance to our reasoning that this document cannot be considered as part of the documents evidencing a contract for the sale of real estate. And lastly, Price did not place the defendant's name on the document in his role as the defendant's agent, but he had merely placed the defendant's name on the handbill as a notation of who was the highest bidder for the real estate. As was noted previously, neither the defendant nor the auctioneer had signed the written agreement for sale of tract I prepared by attorney Stone. Therefore, there was no signed document by the defendant or his agent in accord with the requirement of the Statute of Frauds. We find that the circuit court properly dismissed the plaintiffs' complaint as the contract was unenforceable under the Statute of Frauds.

We also note that the defendant has filed a cross-appeal in this case. In his cross-appeal, the defendant raises the issue that the circuit court erroneously denied the second count of his motion to dismiss, in which he stated that the plaintiff had sold tract I without notice to the defendant, and under the theory of the election of remedies, the plaintiff had no cause of action. Because of our disposition of the direct appeal, it is unnecessary that we consider the defendant's cross-appeal. This court will not consider an issue to determine an abstract question of law.

For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed.

Affirmed.

HARRISON and WELCH, JJ., concur.