## FRANCIS B. PEABODY

*v.*

## SAMUEL HOARD.

1. AGENT—*power of to convey land.* A party may by letter authorize another to make a contract for the sale of real estate.

2. A power to convey land must be in writing, and of equal dignity with the deed to be executed.

3. An agent is not authorized by a letter not under seal to make a deed for his principal.

4. A person purchasing of an agent is bound at his peril to see the authority of the agent before he purchases.

APPEAL from the Superior Court of Chicago; the Hon. JOHN M. WILSON, Chief Justice, presiding.

The facts are fully stated in the opinion.

Messrs. COPELAND & CRAM, for the appellant.

Messrs. BARKER & TULEY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by Francis B. Peabody, in the Superior Court of Chicago, against Samuel Hoard and Henry F. Balch, to enjoin Hoard from prosecuting an action of ejectment which he had commenced in that court against the tenant of appellant, for the recovery of eighty acres of land. It appears from the record, that Henry F. Balch, prior to the 24th day of August, 1853, owned the land in controversy. That he being in immediate need of money, and residing in Salem, Massachusetts, on the 14th day of March, (the year is not given), wrote a letter to his brother, Moses P. Balch, in which he authorized him to sell the land. He directed him to sell it, if he could get $225 for the prairie, and $25 for the timber land; and all over that price he authorized him to retain for his trouble. He says, "I shall want all the money I can scrape together to pay my way through." From other evidence in the case, it seems that this letter was written in March, 1851.

It further appears, that Moses owned an adjoining eighty acre tract, which he had bought of one Hall, and was paying him five per cent. per month, as interest on $300 of the purchase money. He was anxious to get rid of this debt, and offered to sell his own 80 acre tract to one Smith, but he would not purchase without he could at the same time obtain the 80 acres belonging to Henry F. Balch. A sale was, however, finally made, by Moses to Smith, of both eighties, and it was so arranged that Smith paid Hall the three hundred dollar debt with interest already accrued. This payment was thus

made, and the three hundred dollar incumbrance to Hall removed from Moses' 80 acres, and the balance of $750 was paid to Moses in jewelry. Hall conveyed the 80 acres belonging to Moses, for which he held the legal title, to Smith, and Moses, as the attorney in fact of Henry F. Balch, conveyed to him Henry's 80 acres.

It appears that Moses lived upon his, and that Henry's was unimproved land; but it appears that Smith removed to the eighty purchased of Moses, and subsequently fenced the tract which had belonged to Henry. In March, 1860, appellant purchased and paid Henry F. Balch for the land, with no other or further notice than such as arises from adverse possession. In June, 1860, Smith having previously died, appellant purchased the land at a sale made by Smith's administrator, and paid $96 as the consideration. Probst was a tenant, in possession under the heirs of Smith; he subsequently attorned to both appellee and appellant, but appellee afterward brought the action of ejectment, to restrain the prosecution of which, the bill was filed.

The evidence discloses the fact, that Smith, before purchasing, advised with an attorney, who informed him that Moses could not make a valid conveyance under the letter as a power of attorney, and informed him that if he purchased, he would have to run the risk of getting Henry F. Balch to ratify it. He, acting on this advice, took from Moses a bond, in which he bound himself to procure a deed from Henry for the land, conveying it to Smith, within " one year and fifteen months," and in case of failure he was to be liable to pay Smith $800, as liquidated damages, and upon his paying that sum, Smith was to quitclaim the land to Henry. Moses never procured the deed and did not pay the liquidated damages.

It also appears that Smith paid to Hall five hundred dollars, and to Moses the balance in watches and jewelry. And upon

this state of facts, the question is raised whether appellant is entitled to the relief sought by his bill.

It is undoubtedly true, that the letter of Henry F. Balch to his brother Moses, gave the latter authority to contract for the sale of the land. To this effect are the cases of *Doty* v. *Wilder*, 15 Ill., 407, and *Johnson* v. *Dodge*, 17 Ill., 433. It was there held, that when a party by parol authorizes another to make a contract for the sale of land, if the authority is pursued, and a written agreement is entered into by the agent, a court of equity will enforce the performance of the agreement, and that such a case is not within the statute of frauds. But it was held in the latter of these cases, that a power to convey land must be in writing, and of equal dignity with the deed to be executed. By the letter, Moses was authorized to sell at the price specified, but while the authority was in writing it was not under seal, and consequently the deed made by him, as attorney for Henry, was inoperative to convey the title.

When, however, the whole of the letter is considered, it is apparent that Henry contemplated a speedy sale, and only intended to empower his brother to sell in a short time from its date. He did not contemplate a sale years afterward, or even many months. This is apparent from the fact that he says that he " wants all the money he can scrape together to pay his way through." He speaks in the present tense. He says he then wants it; not that he shall want it at some future time. It, however, appears that the sale was not made until two years and five months after he received the authority.

Smith was bound at his peril to see the authority of the agent before he purchased, and in this case did see it, and not only so, but took legal advice upon it, and was informed that it was insufficient; that if he purchased, he would have to run the risk of getting it confirmed by the owner. He seems to have concurred in the opinion of the attorney, inasmuch as he took from the agent a bond to indemnify him against loss

growing out of the purchase. He could see, and must have known, that the letter required a speedy sale, and yet he purchased almost two years and a half afterward. The avenues of information were open to him and he availed himself of them, as he was bound to do in dealing with an agent. He had no pretense, even, that he was imposed upon, as he was informed that he would acquire no title by the purchase. Yet, knowing these facts, he chose to risk the chances of getting the sale confirmed; or, failing in that, in obtaining indemnity from the agent. Failing to get a ratification, he only had the right to look to his bond for indemnity.

In this case the letter only authorized a sale for money. It speaks of so many dollars as the price for which the sale could be made, and he says he "wants to scrape together all the money he can to pay his way." There is no pretense that either Smith or Moses P. Balch could have understood that the sale could be made for watches. Yet it seems it was. It is true, that five hundred dollars was paid in money, yet Moses sold his improved tract with the other, and appropriated the five hundred dollars to pay the balance of the purchase money he owed on his tract, which Smith paid to Hall in person. Without a payment of that amount he could not obtain a release from Hall. It would therefore seem that this land was paid for in watches, and such a payment was not authorized by the letter.

Smith having acquired no title by his deed, nor any right to a specific performance of the unauthorized act of Moses Balch, his heirs and assigns could succeed to no better title than he held. The purchaser at the administrator's sale had the means of learning the nature and extent of Smith's claim; and in a matter of such importance the presumption would be that he became fully informed before he purchased. He then cannot urge that any fraud was perpetrated upon him. He no doubt examined the title and learned its character before he purchased. If so, he ran all risks of losing the land, and

he is without any equitable remedy. The court below, therefore, acted properly in dismissing complainant's bill for the want of equity, and the decree must be affirmed.

*Decree affirmed.*