## TILTON et al. *v.* COFIELD et al.

ATTACHMENT— *lien of*—*for what amount.* As against other creditors of a
defendant in attachment and purchasers from him, the lien acquired by
levying the writ cannot be for more than is specified in the affidavit and
writ.

*May be dissolved by adding to the demand.* If, after levy of an attachment, the
property attached be sold by the debtor, and the creditor thereafter add to
his demand, and with notice of such sale take judgment for more than was
first claimed in the affidavit, the lien of the attachment is thereby avoided
as against the purchaser.

Whether, if the creditor, without knowledge of the sale and conveyance of the
attached property, add to his demand and take judgment for a greater
amount than was originally claimed, he will lose his lien, is not clear

But, whatever rule may be applied, when the creditor has only constructive
notice of other liens upon the property, if, with actual knowledge of such
liens, he attempts to enlarge his own demand against the property, he is
guilty of fraud.

*What shall be notice of sale and conveyance in such case.* That the purchasers
attempted to intervene in the attachment suit, and to contest the plaintiffs,
demand after it had been increased and before judgment, was sufficient to
put plaintiffs upon inquiry as to their title.

POWER OF ATTORNEY *not under seal.* A deed executed by an attorney in
fact, under a power which is not under seal, will not pass the legal title.

DEED *defective may have effect as contract of sale.* But such deed may be
regarded as a contract for the sale of the property, sufficient, under the
statute of frauds, and enforceable in equity.

EQUITABLE TITLE *is enough.* And complainants holding such equitable right
are entitled to protection and relief in a court of equity, in the same
manner as one holding by legal title.

PLEADING AND EVIDENCE — *how far the evidence must support the bill.* And
this is so, as against appellants, who are attaching creditors only, although
complainants set up a legal title in their bill, and did not ask to have the
contract specifically performed.

It might be otherwise if the vendor and judgment debtor should complain, but as he has not appealed, the court presumes that he is satisfied with the decree.

*Appeal from District Court, Arapahoe County.*

THE bill was filed by Joseph B. Cofield, Daniel Witter, Richard E. Whitsitt, John Roache, Erastus F. Hallack, Charles Hallack and Amos Steck against Alfred E. Tilton, Charles E. Tilton, David J. Cook, Judson H. Dudley and John Alexander ; it alleged that on the 28th of August, 1865, Alfred and Charles E. Tilton sued out of the district court of Arapahoe county, an attachment against Judson H. Dudley and Thomas P. Ames, for the sum of $2,629.80, which writ was levied upon a large number of lots in the city of Denver, as the property of said Dudley ; that said Tiltons filed their declaration in that cause in which they claimed damages in the sum of $3,000 ; that at the December term, A. D. 1865, of the district court, the Tiltons recovered judgment against Dudley for $2,591.44 and costs, which was afterward reversed in the supreme court of the territory ; that on the 9th of March, 1867, Dudley conveyed the lots levied upon to David H. Moffat, Jr., as security for the sum of $2,500, loaned by Moffat to him ; that Cofield, Witter, Whitsitt and Steck, purchased from Dudley all the lots so conveyed to Moffat and other lots and land, for the sum of $5,100 ; and that Moffat conveyed the same to them with the assent of Dudley, on the 23d of May, 1867. The several interests of the complainants in the lots described are set out at length in the bill, but these are not material to the questions discussed in the opinion. It was further alleged, that on the 12th of September, 1868, the Tiltons filed in the attachment suit against Dudley and Ames, an amended affidavit, claiming that the said Dudley and Ames were indebted to the said A. E. and C. E. Tilton, in the sum of $2,620.80 on an account and promissory note, and for goods, wares and merchandise sold and delivered, and for money loaned, laid out and expended for said Dudley and Ames ; that said note was given for part of the purchase-

price of said goods, wares and merchandise, dated 17th of September, 1864, payable to the said A. E. and C. E. Tilton four months after date, for the sum of $2,592.80, with interest at the rate of two per cent per month from date until paid ; that, on the same day, the plaintiffs in that suit filed an amended declaration claiming damages against the said Dudley and Ames upon said promissory note and upon the other counts in said declaration, in the sum of $7,000 ; copies of the original and amended pleadings were attached to the bill as exhibits ; that on the 5th of May, 1869, Dudley confessed judgment in the attachment suit for $5, 652.80 and $29.50 costs, upon which the court awarded a special execution and order of sale of the lots of said Dudley, levied upon by virtue of said writ of attachment ; that the complainants bought the lots in good faith and without any knowledge of any claim or indebtedness on the part of the plaintiffs in the attachment suit against the said Dudley and Ames, other than appeared in the record and papers in said suit then pending ; that the Tiltons had sued out execution upon the said judgment and were about to sell the lots described to satisfy the same ; complainants asked that so much of the judgment in favor of A. E. and C. E. Tilton against said Dudley as provides for the issuing of a special execution and order of sale might be vacated and set aside, and the several lots released and discharged from the lien of said judgment : that the Tiltons and the said Cook as sheriff might be enjoined and restrained from selling under the said execution, etc., a portion of exhibit K, which is referred to in the opinion of the court, and which was admitted in evidence by the stipulation of the parties, was as follows :

*November* 1, 1869.

A. E. &. C. E. Tilton
*v.*
Judson H. Dudley, impleaded
with Thomas P. Ames.

*Attachment.*

And now, on this day, come the said plaintiffs, Messrs. Charles and Elbert, their attorneys, and also comes the said

J. Bright Smith by Amos Steck, Esq., his attorney, and comes the said Daniel Witter, Joseph B. Cofield and Richard E. Whitsitt, by Amos Steck, Esq., their attorney, and the said Amos Steck in his own proper person, and also comes the said defendant Judson H. Dudley, by L. B. France, Esq., his attorney, and the court having heretofore, at the last term of said court, taken the motion of the said J. Bright Smith to strike the said plea of the said defendant confessing judgment in said suit, filed on the 5th day of May, A. D. 1869, by L. B. France, Esq., as the attorney of the said defendant, the power of attorney of the said defendant authorizing the said France to file said plea, from the files of said suit, also the said motion and petition of the said Witter, Cofield, Whitsitt and Steck, praying to be made parties, and for leave to contest the said plaintiffs' claim in the suit under ·advisement, and the court having duly considered said motion and petition, and being fully advised in the premises ; it is therefore considered by the court that said motion and petition be overruled and denied. And the court having also heretofore, to wit : on the 6th day of May, A. D. 1869, and of the May term of said court, A. D. 1869, taken under advisement the motion of the said plaintiffs for judgment on the said plea of the said defendant, confessing judgment in this suit, and the court having considered the same, and being fully advised in the premises ; it is, therefore, considered by the court that the said plaintiffs do have and recover of the said defendant, Judson H. Dudley, the said sum of five thousand four hundred and seventy dollars and eighty cents ($5,470.80), together with interest on said sum from the date of filing said plea at the rate of 10 per centum per annum to the date of entering this judgment, amounting to the further sum of $272, making the full sum of five thousand six hundred and forty-two dollars and eighty cents ($5,642.80), as their damages so as aforesaid confessed by the said defendant in his said plea, and the interest thereon as aforesaid, and also their costs by them about this suit in this behalf laid, and expended, taxed at         dollars, and that they have execution there-

for, and that a special execution and order of sale for the sale of the property of the said defendant, Judson H. Dudley, attached on the writ of attachment issued herein, do issue. In their answer appellants admitted the commencement of the attachment suit, and the various proceedings therein down to the rendition of judgment; they denied that they had notice of any of the conveyances set forth in the bill. By stipulation, the original and amended affidavits and the other papers in the attachment suit were put in evidence. It was also admitted that the first judgment in the attachment suit for $2,591.44 was entered on the 27th day of January, 1866, and that judgment was reversed on the 10th of February, 1868; that, after the reversal of that judgment, the amendments referred to in the bill were made in the attachment suit. In evidence it appeared that the deed by Dudley to Moffat was made by Chever under a power of attorney which was not under seal; it also appeared that the note mentioned in the amended affidavit and declaration was given for the consideration mentioned in the original affidavit, but such note was not referred to in the original affidavit; there was much more testimony which it is unnecessary to insert here. In a supplemental bill it was alleged that the lots were sold on the 13th of March, A. D. 1871, by the sheriff of Arapahoe county, under the execution and judgment aforesaid; that the said Tiltons became the purchasers at such sale, and had received a deed therefor; these allegations were admitted by appellants. At the hearing the court set aside the sale so made, and so much of the judgment as relates to a sale of the lots for the satisfaction of the judgment. The court also decreed that the lots should be released and discharged from the lien of the judgment, and enjoined Tiltons from selling under the same. From this decree the Tiltons, Alfred and Charles, appealed.

Mr. J. Q. CHARLES and Mr. A. C. PHELPS, for appellants.

Mr. AMOS STECK, for the appellees.

Mr. JUSTICE BELFORD dissented.

HALLETT, C. J.   Appellants sued out an attachment against Judson H. Dudley and Thomas P. Ames for the sum of $2,620.80, which was levied upon property belonging to Dudley.   Pending the suit Dudley conveyed two of the lots to John Alexander, who, subsequently, conveyed the same lots to the appellees, Erastus F. and Charles Hallack.   Other lots upon which the writ was levied were conveyed to David H. Moffat, Jr., to secure a loan of $2,500, made by him to Dudley, and Moffat, with Dudley's assent, subsequently sold and conveyed these lots to the appellees, Cofield, Witter and Whitsitt.   The other appellees claim by assignment from the parties last named.   In the affidavit for attachment the demand was alleged to be for goods sold and delivered, and the declaration contained the common counts.   After the above-mentioned conveyances had been made, appellants amended the affidavit and declaration, and counted upon a promissory note for the sum of $2,592.80, dated September 17, 1864, bearing interest at the rate of two per cent per month from date until paid, and increased the damages laid in the declaration from $3,000 to $7,000.   Upon the declaration as amended, Dudley confessed judgment for $5,652.80, which, it will be observed, is more than double the amount claimed in the original affidavit.   To satisfy this judgment, execution was awarded against the property upon which the attachment had been levied, and this bill was filed to set aside that portion of the judgment, and enjoin any sale of the property.   By a supplemental bill, and the answer thereto, it appears that since this bill was filed, the property has been sold to appellants, under an execution issued on the judgment.   The statute regulating attachments provides that the writ shall be issued upon affidavit filed by the creditor, stating the nature and amount of the indebtedness, and the officer is required to levy the writ upon the property of the debtor, of value sufficient to satisfy the sum sworn to be due.   Rev. Stat. 52. When the writ is levied upon real estate, the officer is required to file a certificate of the fact in the office of the county recorder, as notice to other creditors and subsequent

purchasers. Rev. Stat. 378. The purpose of the law is to enable the creditor to seize property, and hold it for the satisfaction of the judgment to be obtained in the cause, and of course the lien of the attachment cannot be greater than the indebtedness stated in the affidavit and writ. Accordingly, it is held, that without service of process or appearance by the defendant, the judgment cannot exceed the sum stated in the affidavit with accruing interest. *Hobson* v. *Emporium R. E. & M. Co.*, 42 Ill. 306 ; Drake's Attachment, § 449, a. And it would seem that in cases commenced by attachment in which process is served upon the defendant, he may confine the plaintiff to the cause or causes of action stated in the affidavit, as well as the sum therein named. *Tunnison* v. *Field*, 21 Ill. 108. But when the defendant, without objection, pleads to matters not alleged in the affidavit, or confesses judgment for a greater sum than is therein demanded, he passes by the question of variance between the writ and declaration, and waives objection upon that ground. This is not, however, material to our present inquiry, which relates to the effect of the attachment proceedings upon the right of third parties who have acquired an interest in the property pending the suit.

Whatever the rule may be as to the defendant, it is clear that purchasers of the attached property take it subject to the lien of the plaintiff for the sum stated in the affidavit and writ, with accruing interest, if he shall obtain judgment in that action for so much. To this extent, the record which is made for that purpose advises them of the incumbrance upon the property, and, therefore, they may be presumed to have knowledge of the fact. But it is said that the right to amend attachment proceedings is conferred by statute and liberally indulged by courts under which new causes of action may be added or the sum stated in the affidavit and writ increased and the property held liable for the whole amount. It will be observed that the eighth section of the attachment act, which confers the right to amend, relates only to insufficiencies in the affidavit, writ and bond, and not to causes of action altogether omitted therefrom. But, con-

ceding that a mistake as to the amount of the indebtedness may be corrected, and even that a cause of action omitted from the affidavit by mistake may be inserted under the authority of that section without prejudice to the proceedings upon which the defendant may rely, it is obvious that third parties cannot be affected by an amendment of that kind. Purchasers and creditors who acquire an interest in the property during the pendency of the suit are entitled to stand upon the record as it existed at the time such interest was acquired, and, of course, they cannot be supposed to have knowledge of any matter of which the record does not advise them. That the plaintiff, by an imperfect statement of his case, may give such notice of his right as will affect purchasers and creditors as well as the defendant in the cause, there is every reason to believe. If, for instance, the creditor should state the facts upon information and belief instead of upon his own knowledge, or if he should claim several distinct sums of money and then state the aggregate amount of them incorrectly, he would probably give to all full notice of his right, although not in the precise manner prescribed by the act. But the present case cannot be brought within any rule, however liberal, upon which amendments may be allowed in attachment proceedings to affect the right of strangers to the suit. In the original affidavit appellants claimed an indebtedness of $2,620.80 for goods, wares and merchandise, sold and delivered, and there was nothing whatever to advise the defendant, or any other person, of any additional claim for interest or upon any other account. The writ followed the affidavit, and the declaration contained the common counts with a general statement attached corresponding with the several counts, and denominated a copy of the account sued on. The damages were laid at $3,000, exceeding somewhat the amount stated in the affidavit according to the usual practice by which the pleader may state any sum which will cover his demand. Nowhere in these papers was there any thing to indicate, even remotely, that appellants had any other demand than that which was set forth in the

affidavit, and so the record remained until after the attached property was sold to appellees. It is claimed that the promissory note, which was afterward brought in by amendment, might have been given in evidence under the common counts in the original declaration, but this will not impair the rule which must control the decision of the question. If we suppose that appellees were by the declaration notified of every cause of action which might have been proved under the common counts, the lien of the attachment could not attach for more than was expressed in the writ and affidavit, with accruing interest, and the interest here referred to is that which might have been recovered upon the case made in the original affidavit, of which only appellees had notice. The promissory note which was subsequently brought into the proceedings by amendment, although given for the consideration stated in the original affidavit, contained a stipulation for interest at a much higher rate than could have been obtained without its aid, and this was, in substance if not in fact, a new cause of action. By it the amount of the judgment was greatly increased, and if the property should be held liable for its payment, appellees would become responsible for a demand of which they had no notice, actual or constructive, at the time they purchased. No argument is required to prove that the right to amend cannot be exercised in that manner to the prejudice of strangers to the suit. Several cases are reported which illustrate the principle. A writ of attachment was levied in March, 1827, and the officer's return was dated June 6 of that year. On the 22d May, in the same year, a mortgagee of the premises attached, recorded his mortgage, and thus obtained a preference over the creditor, notwithstanding the return to the writ was afterward amended so as to show the true date of the levy. It was said *arguendo* that a purchaser for a valuable consideration, ignorant of any attachment at the time of his purchase, would unquestionably have held against a creditor claiming under that attachment, and no amendment of the officer's return would defeat his title. *Emerson* v. *Upton*,

9 Pick. 167. Upon an execution against Wm. Kroger, the goods of Benjamin were seized, and the amendment of the judgment and execution, by which the latter's name was inserted, was not allowed to defeat the title of an intervening purchaser. *Shirley* v. *Phillips*, 17 Ill. 471. The principle is also affirmed in *McCormick* v. *Wheeler*, 36 Ill. 114, and doubtless other cases may be found to the same point. We have, therefore, no hesitancy in saying that the amendment of the affidavit, writ and declaration did not affect the rights of appellees in the property attached, or authorize the entering of a judgment against the property in their hands for more than could have been claimed upon the record as it stood prior to that time. Assuming that appellees acquired an interest in the property attached before the writ and declaration was amended, a matter which will be considered more at length hereafter, we will endeavor to ascertain the effect of the amendment and the judgment taken in pursuance thereof, upon the lien of the attachment. As we have seen, appellants had a lien upon the property attached at the time of the sale to appellees, for the sum of $2,620.80, for which they might have taken judgment. The most that can be claimed now is, that this lien still subsists, and that the judgment against the property may be enforced for that amount. In a proceeding by attachment the lien of the writ merges in the judgment taken in the cause, and the latter takes effect upon the attached property as of the date of the levy. *Bagley* v. *Ward*, 37 Cal. 121. When, as in this case, the judgment is for more than the plaintiff may rightfully demand against the attached property, there would appear to be some difficulty in giving effect to it, contrary to its tenor. If, for instance, appellants had sought and obtained a special execution against the property for the $2,620.80, specified in the affidavit before the amendment, the judgment being for a larger sum, there would be some question as to the power of the court thus to limit the effect of the judgment.

If, however, this is a difficulty which equity will disregard, the form of the judgment being immaterial, if in good

conscience, appellants are entitled to a lien upon the property for any sum, it will not be profitable to discuss this point further.

As between attaching creditors, it appears to be well settled that a prior attachment will be dissolved if the creditor take judgment for more than he is entitled to under his writ, or upon a cause of action not specified therein.    Drake on Attachment, § 282.

The suggestion that this rule cannot prevail in this territory because of the peculiarity of our statute, which admits creditors whose writs are returnable to the same term of court to share *pro rata* in the proceeds of the attached property, is not supported by the reason upon which the rule is said to be founded.    In *Willis* v. *Crocker*, 1 Pick. 204, it was said that the subsequently attaching creditor had a vested right to the excess beyond the amount of the judgment to be rendered upon the writ of the first attaching creditor as it was when served, and the same reason for the rule is assigned in other cases.    The proposition affirmed is, that he whose writ is first levied shall not be allowed to appropriate more of the common fund than he has demanded in his writ, and thus diminish the sum to which others are entitled, and it is just as applicable to the case in which the creditors share *pro rata* as to the case in which one holds a preference over the other.    In either case what is taken by one creditor cannot be awarded to another, and although the effect of the rule may be different, its applicability in both classes of cases cannot be doubted.    Whether changing the cause of action or adding to the demand, without actual knowledge on the part of the creditor of the existence of other liens upon the attached property, will work a dissolution of the attachment is not entirely clear upon authority.    The cases are reviewed in *Page* v. *Jewett*, 46 N. H. 441, and the language of the court, although not directly to the point, appears to support the notion that the attachment will, in such case, be dissolved.

But in *Felton* v. *Wadsworth*, 7 Cush. 587, the mistake of the plaintiff's attorney, in taking judgment for too much,

was not regarded as sufficient to dissolve the attachment, and the idea advanced is, that there must be an intention to do wrong, or fraud, in fact, on the part of the plaintiff, before such a consequence can be visited upon him. The conclusion of the court was, that there must be fraud to bring a case within the principle of the adjudged cases, and this could hardly subsist without a consciousness of wrong on the part of the creditors. To apply this principle to a case in which judgment has been taken with the assent of the debtor, for a sum that was clearly due, and without actual knowledge of the existence of any other lien upon the property attached, it would seem that the creditor, not being chargeable with any intention to do wrong, should not, in equity at least, be deprived of his right. But this distinction, if it exists, does not arise in the case at bar, inasmuch as it is shown by the record, that appellants had knowledge of the sale to appellees before they took judgment and sued out execution against the property. Whatever rule is applied when the creditor has only constructive notice of the existence of other liens upon the property, if with actual knowledge of such liens he attempts to enlarge his own demand against the property, he is clearly guilty of fraud in fact as well as in law. In such case the creditor, with full knowledge of the rights of the others, attempts to appropriate their property to his own use, through and by means of the forms of law, and he is therefore justly amenable to the charge of fraud. In the bill of complaint filed by appellees, it was alleged that appellants had notice of the sale to appellees at the time it was made, and although the charge is denied in the answer, it is, I think, sustained by the copy of the judgment in the attachment suit which was attached to the bill, and was put in evidence by the stipulation of the parties. By the transcript of the judgment, it appears that the appellees, Cofield, Witter, Whitsitt and Steck, appeared in the attachment suit before judgment was rendered and asked to be made parties and for leave to contest appellants' claim, but they were not allowed to do so. It is not shown upon what ground appellees proposed to

contest appellants' claim, but the fact that they appeared in the case and demanded a hearing was sufficient to put appellants upon inquiry, and if they did not ascertain the facts in regard to appellees' title, the fault was their own. In this feature the case is like that of *Hale* v. *Chandler*, 3 Mich. 532, in which the like circumstance was held to be sufficient to charge the plaintiffs in attachment with notice. That was a bill by an attaching creditor to postpone a judgment obtained by another creditor upon a writ levied prior to the complainant's, and the principles upon which such relief may be granted are very fully discussed. In addition to the circumstance that appellees attempted to interfere in the attachment suit, a special execution was obtained against the property attached for the whole amount of the judgment, and we learn from the supplemental bill and answer that since this suit was begun, the property has been sold under such execution, and that appellants have become the purchasers. It is obvious that appellants knew before they took judgment that appellees had, or claimed to have, some interest in the property, and by proceeding to judgment and execution against the property, they have manifested a disposition to appropriate the property to their own use without regard to the right of appellees, and this brings the case within the principle of all the authorities that I have examined. The circumstance that appellees are purchasers of the property cannot be relied upon to distinguish this case from those cited. A purchaser is entitled to the same protection as an attaching creditor, and he may as confidently appeal to a court of equity for such protection. The appellees, Erastus F. and Charles Hallack, holding two of the lots by an unquestioned title from Dudley, are fully in the attitude of purchasers. The other appellees have an equitable right, only having failed to obtain a legal title by reason of the want of a seal on the power of attorney from Dudley to Chever. The deed to Moffat was for that reason insufficient to pass the legal title. *Mans* v. *Worthington*, 3 Scam. 26 ; *Peabody* v. *Hoard*, 46 Ill. 242 ;

and parol ratification of the deed did not cure the defect. Story on Agency, §§ 242, 252. But the instrument was a sufficient memorandum under the statute of frauds, and has every element of a perfect contract which will be enforced in equity. It is a doctrine of the court that things agreed to be done shall be regarded as actually performed, and the appellees other than the Hallecks are for the purposes of this suit, equally with the latter, to be regarded as purchasers. The circumstance that they have not obtained the conveyance which a court of equity will award, cannot defeat their right. I understand that one who holds under an executory contract cannot defeat a prior equity, as perhaps he may who holds by legal title. *Villa* v. *Rodriguez*, 12 Wall. 323. But this principle has no application to the case at bar, in which appellants are visited with the consequences of their own wrong. By doubling the amount of their judgment, and seeking to charge the property attached with an amount to which in the hands of appellees, it was not subject, they abandoned the lien of their attachment, and lost their right to enforce it, and this must be true in support of an equitable as well as legal title. The allegations of the bill as to the title of Cofield, Witter, Whitsitt, Roche and Steck, are not, strictly speaking, according to the fact, inasmuch as those parties have an equitable title only. To have complete relief these appellees should have brought their bill for specific performance of the contract with Dudley, making appellants parties thereto. Probably, Dudley might, if he were here, object that the controversy is not determined by the decree of the court below, but he has not appealed, and we must presume that he is satisfied with the decree. *Williams* v. *Starr*, 5 Wis. 534. The evidence establishes an equitable title in the appellees' excepting the Hallecks, who, as we have seen, have a legal title, and thus falls short of the allegations of the bill, but does not vary therefrom. So far as it goes the evidence is in support of the bill, but it does not come up to the point of establishing a legal title in those who claim under the deed to Moffat. The deed to Moffat, as we have for con-

venience called it, which is relied upon in the bill to establish the legal title of those claiming under it, is the evidence of the equitable title which the court by its decree sought to protect, and, therefore, there was no surprise to any one. We do not say that the bill is sufficient to maintain a decree for specific performance, but at the time it was filed, no sale had been made to appellants, and we think that the court might protect appellees' rights in the property attached against the unwarranted assault of appellants. Notwithstanding the fact that the bill claimed more than the parties complainant were entitled to, such was the relief given by the court below, and we find no error in the decree of which the appellants may complain. The decree of the district court is affirmed with costs.

BELFORD, J., dissenting. I am unable to concur in the conclusion reached by the majority of this court. The property at the time of the sale by Dudley to Cofield and his associates was in the custody of the law, being bound by the levy of the attachment. They were then purchasers with notice and chargeable with every fact that the record disclosed at the date of their purchase. *Davis* v. *Chrisham*, 15 Gratt. 41 ; *Rey* v. *Doe*, 2 Blackf. 258.

He who buys property while it is in the custody of the law and subject to a decree or judgment that may be made or entertained by a court in the enforcement of a specific lien is not a favored purchaser, nor is he entitled to the most benignant consideration of a court of equity. Anciently, such purchases were regarded as void, but this harsh doctrine has yielded to the softening influences of time, and the later decisions, instead of holding that a conveyance is annulled by the pendency of an action, simply affirm that the property purchased shall be held subject to the rights of the parties in litigation. *Julor's Lessees* v. *Harvey*, 11 Md. 524; *Meux* v. *Anthony*, 6 Eng. 422; *Whiting* v. *Bebee*, 7 id. 566 ; *Harrington* v. *Slade*, 22 Barb. 166. At the time of the purchase the demand of the attaching plaintiffs amounted to something over $2,620.85. This

claim was evidenced by the record, and Cofield and Steck were bound to take notice of it when they bought the property. The defense set up to avoid the payment of this sum is, that after the purchase the attaching creditors increased their demand so that ultimately they obtained judgment for $5,000. There is nothing in the record to show that, at the time the amendment was made, the plaintiffs had any knowledge of the alienation of this property. A fraud at that time could not have been meditated against Steck and Cofield because their connection with the property was not then known. Nor is there any thing in the record to show that the claim of the Tiltons was other than honest and just in every respect. I take it to be well settled that a plaintiff can proceed in the suit without noticing the alienation, and the decree he obtains will bind the purchaser. If the plaintiff makes the purchaser a party, the alienee is bound by the previous proceedings in the suit before he was made a party, and he comes before the court in the same plight and condition as the former party, and is bound by his acts and may be subject to the cost of the proceedings from the beginning of the suit. *Harrington* v. *Slade, supra*. I am willing to admit that the purchaser should not be chargeable with an amount greater than that claimed by the plaintiffs at the date of the alienation, with interest, but I am not ready to hold that the mere increase of their demand, when honestly made, forfeits their right to the whole claim against the property seized. Such a doctrine as this would practically arrest and preclude all amendments of the pleadings pending the progress of a case, and what is more, would devolve on the plaintiff a duty never yet recognized or enjoined, namely, that of keeping trace of all alienations made by a defendant *pendente lite*. *Green* v. *Cole*, 13 Ired. 425, 430. The forfeiture, if it can be justified on any principle, must be that of punishment for a fraud attempted or committed. In this case, I am unable to discover any fraud in the amendment made, for the reason that the increase of the claim was just, and that the plaintiffs were ignorant of any rights acquired by Cofield or

his associates, nor do I think that Cofield and company were misled, for it nowhere appears that either of these parties felt enough of interest in the suit prior to their purchase to inquire and ascertain the amount of Tiltons' demand. Whitsitt swears that he bought the property to make money out of it; that he had heard the controversy between Dudley and Tilton canvassed, and the general impression was that it would not amount to much. Cofield had heard that there was a judgment against Dudley for about $2,500. Witter swears that Steck told him that the attachment could not be sustained. What Steck knew, or tried to know, about the amount of indebtedness does not appear, as he was not examined. They were all anxious, however, to buy the property. A fair inference from all the testimony is, that these gentlemen took advantage of Dudley's embarrassed circumstances to buy the property cheap, trusting to Steck's opinion that the attachment could not be sustained. A speculation promising rich profits was in sight, and the eagerness for trade deadened the caution that would have prompted unimpassioned men to make inquiries as to the status of the property. It is difficult to say that these gentlemen were misled when not one of them, so far as the evidence shows, ever deigned to make an inquiry at the clerk's office, or to examine a paper in the case prior to their investment. I am aware that, as between attaching creditors, it has been held that an increase of the demand of the first creditor will have the effect to dissolve his attachment as to the subsequent creditors. The ground on which some of these decisions is made to rest is, that the subsequent attaching creditor is entitled to the excess, if any, that remains after satisfying the first claim, and that to permit the first creditor to swell this original claim by adding thereto other demands, might lead to the absorption by him of the whole property. With all deference to the courts that have pronounced these decisions, I must say that such a doctrine can only be sustained on the ground that such increase is made with a fraudulent intent, and with a view to secure a dishonest advantage;

and that as a punishment for such fraud the attachment is dissolved, and the preference given by the law is destroyed; were it otherwise, the doctrine would uproot the whole power of amendment; a power essential to the administration of justice, and not infrequently used, even when it does affect existing rights. *Green* v. *Cole, supra,* 430; *Cobargo* v. *Segar,* 17 Penn. St. 514. Every man who buys property in *custodiæ legis* should, as against an honest creditor having a lien upon it, be understood to act with a full knowledge that the courts can, and, in cases deemed proper by them, will amend not only the pleadings, but their records and process as far as they can do so consistently with truth.

A most diligent research has not been rewarded by the discovery of a case that applies the doctrine announced by the majority of this court to a subsequent purchaser. Until this time such a purchaser has never been regarded as a favored suitor in any court. Thus in *Scott* v. *McMillen,* 1 Litt. 308, the court says: "Here the property gives jurisdiction to the court; the right of property is in contest, and during the pendency of such a contest, no transfer of the property by the debtor can be admitted to produce any prejudicial effect on the complainant's demand." In *Murray* v. *Lylburn,* 2 Johns. Ch. Rep., Chancellor KENT said: "There is no principle better established than that the purchase of the subject-matter in controversy, *pendente lite,* does not vary the rights of the parties in that suit, who are not to receive any prejudice from the alienation." " He who purchases during the pendency of a suit 'is bound," says Sir WILLIAM GRANT, "by the decree that may be made against the person from whom he derives title. The litigating parties are exempt from the necessity of taking notice of a title so acquired. The rule may sometimes operate with hardship, but general convenience requires it." *The Bishop of Winchester* v. *Payne,* 11 Vesey, 194; *Osborn* v. *Bank,* 9 Wheat. 733. Numerous other authorities might be cited to the same effect, but it is unnecessary; see, how-

ever, the case of *Whiting* v. *Bebee,* 7 English, 565, and the cases there cited.

There is another view of this case which strikes me as being entitled to more than ordinary consideration. The power of attorney from Dudley to Chever, who makes the deed to the complainants, is not under seal.

In *Hayward* v. *Haswell,* 6 Adolph. & Ellis, 265, it was held that where an agent or attorney had no properly authenticated power to execute a deed of conveyance, but his authority was sufficiently witnessed to authorize him to execute an agreement to make such conveyance, it was held to operate merely as an executory agreement. We then have the complainants Steck, Cofield, Whitsill and Witter, clothed simply with an executory contract, or in other words, with a contract for a conveyance. To perfect their title, they must either voluntarily obtain a legal conveyance, or bring their bill for specific performance. To this proceeding the Tiltons would have to be made parties. Now, if the complainants whose title, if they have any, is merely equitable, seek to compel Tiltons to convey to them the legal estate, would not equity enjoin upon them the payment of the amount which the record disclosed at the date of their ineffectual purchase from Moffatt? In *Villa* v. *Rodriguez,* 12 Wall. 338, it is held that a party holding under an executory contract like this is not a *bona fide* purchaser. That the doctrine only applies where the legal title has been conveyed and the purchase-money fully paid.

In conclusion, let me recapitulate the facts. We have the complainants clothed simply with a contract for a conveyance. We have a suit pending where the indebtedness claimed amounted to $2,620.85, and a levy by virtue of attachment on the property in question. We have the further fact that the complainants in this bill were informed by the record of the amount of Tiltons' demand, and they were bound to know that in the progress of the trial this indebtedness might, or probably would, ripen into a judgment. We have the further fact that the complainants

bought this property for speculative purposes, and doubt- · less in fixing the price they were willing to pay for it, considered that the plaintiffs in the attachment suit might possibly recover a judgment for $2,620.85, together with interest. To this claim then they were in no sense innocent purchasers. They bought with their eyes wide open, and should not now be permitted to close them against the performance of a duty which equity and good conscience enjoins upon men thus situated. This would be simple justice, and the conscience of every man, be he jurist or layman, could not but approve such a determination of the issue. It would seem to me, therefore, that the decree of the court below ought to be so far modified, as to require the Tiltons to execute to Cofield and the other complainants a quit-claim deed for this property upon their paying to them the sum of $2,620.85, together with interest at the rate of ten per cent to the day when said money is paid.

*Affirmed.*