William L. Rodisch *et al.* Defendants in Error, *vs.* William H. Moore *et al.* Plaintiffs in Error.

*Opinion filed December 16, 1914.*

1. Powers—*unauthorized exercise of power of sale does not effect a conversion of the land into money.* A contract for the sale of real estate, executed by an attorney in fact of the owner under a power of sale which was not absolute but only authorized a sale of the land "if necessary," does not effect an equitable conversion of the land into money where no necessity for the sale existed, and the contract cannot be enforced after the owner's death.

2. Same—*party dealing with an attorney in fact must know his authority.* One purchasing land from the attorney in fact of the owner is bound to know the attorney is acting within his powers.

3. Costs—*decree for costs to be paid by executor in due course of administration should not order execution.* A decree requiring an executor to pay one-half the costs "in due course of administration" should not order that an execution issue against the executor for costs.

Writ of Error to the Superior Court of Cook county; the Hon. John M. O'Connor, Judge, presiding.

R. E. Pendarvis, McEwen, Weissenbach, Shrimski & Meloan, and Robert N. Holt, for plaintiffs in error.

C. VanAlen Smith, Eastman & White, Ralph R. Hawxhurst, and William Gibson, for defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

This litigation was begun by defendants in error filing a bill for the partition of certain real estate which belonged to Levi Moore in his lifetime. Said Levi Moore died testate on May 3, 1906, and the rights of the parties depend upon a construction of his will. The case has previously been twice before this court. The first decision did not settle the rights of the parties but the decree was reversed for a failure to make a necessary party defendant to the

bill. (*Rodisch* v. *Moore*, 253 Ill. 296.) The case was re-manded to the superior court, and upon being re-instated on the docket the omitted party interested was made a de-fendant, brought into court and such proceedings were had that a decree was rendered holding the execution of the third paragraph of the will of Levi Moore was impossible, that said paragraph was invalid, and that the real estate attempted to be disposed of by it descended to the heirs as intestate estate. The real estate sought to be partitioned consisted of a forty-acre tract and two ten-acre tracts, all in Cook county.

On the 16th of September, 1904, Levi Moore, who was then eighty-eight years old, gave Aaron C. Koethe, his physician, a power of attorney authorizing him to lease said Moore's property, loan and deposit his money, collect all money due him on notes, checks or as rents, pay all expenses and debts, such as taxes, insurance, assessments, maintenance and incidental expenses, to make all necessary repairs on the property "and sell or mortgage the same if necessary." This power of attorney was acknowledged on the day of its date and was recorded September 19, 1904. On the 23d of February, 1906, and a little more than two months before Moore's death, Koethe, as attorney in fact for Moore, entered into a written agreement with Albert F. Keeney whereby said Keeney agreed to buy, and Koethe, as attorney in fact for Moore, agreed to sell him, the forty-acre tract of land for $7000, to be paid for on the first day of May, 1907, and Koethe agreed to convey to Keeney, by warranty deed, a good and merchantable title free of encumbrances, except taxes subsequent to the year 1906. The agreement recited Keeney had paid $25 earnest money, which was to be applied on the purchase price. The bill of complaint alleged the contract of sale to Keeney was invalid, that no necessity arose authorizing the sale, and that the sale was inequitable, unconscionable, unreasonable and unauthorized by the power. When the case was re-docketed

in the superior court, John J. Lovett, (the executor of the will of Levi Moore,) Keeney and Susan Ann Rowlett, legatee of the personal property under the will of Moore, asked leave to offer evidence in support of their claim that the contract of sale with Keeney was a valid and binding contract. The chancellor denied leave to introduce further testimony, and upon the evidence before him, which had been taken and reported by the master previous to the former decree, entered another decree, finding the Keeney contract was invalid, 'that it was not made pursuant to the power given and that the sale was inequitable and unconscionable, and the contract was set aside as a cloud on the title. The decree ordered partition of the forty acres, together with the other land, among the parties according to their rights as therein found. The executor, Keeney and Susan Ann Rowlett prosecuted an appeal to this court from that decree. This court held the superior court erred in denying leave to appellants to introduce the offered evidence, and reversed that part of the decree holding the Keeney contract invalid and remanded the case, with directions to hear further testimony upon that question. In all other respects the decree was affirmed. (*Rodisch* v. *Moore,* 257 Ill. 615.) Upon the case being again re-instated in the superior court the cause was referred to the master to take further evidence and report his conclusions upon issues made as to the validity and effect of the Keeney contract. The master found and reported that the contract of sale made by Koethe with Keeney was unauthorized by the power, that it was inequitable and unfair and its performance would not be required by a court of equity. Exceptions to the master's report were overruled and a decree entered in accordance with the master's recommendations, setting aside the contract as a cloud on the title of the heirs of Levi Moore, deceased. This writ of error is sued out by the executor, Lovett, Keeney and Susan Ann Rowlett to review that decree.

Plaintiffs in error contend that the power of attorney authorized Koethe to sell the land; that the contract of sale made by him to Keeney was a valid exercise of the power and worked an equitable conversion of the land into personal estate, which passed, under the will, to the legatee of the personal property, and not to the heirs of the testator, as intestate real estate. The doctrine of equitable conversion as announced in repeated decisions was summarized in *Rhodes* v. *Meredith,* 260 Ill. 138, in the following language: "That doctrine rests on the maxim that equity regards that as done which ought to be done, and the situation presented by this record is a fitting illustration of the maxim. Under that rule real estate may, under proper circumstances, be regarded, in equity, as personal property and personal estate may be regarded as real, and transmissible and descendible as such. (Eaton on Equity, sec. 96; *Haward* v. *Peavey,* 128 Ill. 430.) When a valid, enforcible contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money, which is personalty. The vendor is regarded as the trustee of the naked legal title for the benefit of the vendee, and the vendee as the trustee of the purchase money for the benefit of the vendor."

It will be observed the power conferred upon Koethe was not an absolute power of sale. The power was to sell "if necessary." A sale under a power expressing an absolute intention of the donor of the power that land shall be sold and converted into money operates as an equitable conversion and fixes upon the land the quality of money, but where a conditional power to sell is conferred and a sale is made without the happening of the conditions upon which the sale was authorized, it is not an exercise of the power and the contract of sale will not effect an equitable conversion. The subject of equitable conversion under powers evidencing an absolute intention that the land shall be sold

and powers conferring an option or discretion to sell will be found discussed in *Haward* v. *Peavey, supra,* and *Ford* v. *Ford,* 70 Wis. 19, (reported in 5 Am. St. Rep. 117, where an exhaustive note on the subject will be found.) Here the authority to sell was not absolute but was only authorized "if necessary," and if no necessity for it arose then the contract for the sale was unauthorized and invalid.

Plaintiffs in error insist that the words "if necessary" do not mean an actual or present necessity or immediate need, but should be construed to mean convenient, useful or essential. The authority to sell real estate under the power could not arise unless there was some necessity for it. The words "if necessary" must be given some meaning. They were a limitation upon the power conferred, and the donee of the power could only lawfully exercise it in accordance with the conditions and limitations imposed. At the time the power of attorney to Koethe was executed Levi Moore was eighty-eight years old. He was a widower and lived and boarded at the home of Susan Ann Rowlett and her husband. He was in a diseased condition for a considerable time before his death. In 1902 he underwent two surgical operations. The first was the amputation of a toe, and later his foot was amputated. Koethe was his attending physician when the power of attorney was executed and when the contract of sale was made and at the time of his death. Dr. Koethe signed the death certificate, stating "cause of death, paralysis, fourteen hours' duration; contributory, general arterio sclerosis and gangrene of lower extremities, three years' duration." Moore died sixty-seven days after the contract of sale was made, at the age of ninety years. It could not have been otherwise than apparent to anyone who saw him that he was very near the end of his life on February 23, 1906, when the contract of sale was made by Koethe to Keeney. He had no children, and no expenses except for his board, nursing, doctor bills and taxes. He owed no debts. His income from rents was

$282 per year. He paid for board and nursing $23 per week. The master found from the evidence, and the decree approved the finding, that at the time of Moore's death he had $425.33 in cash; that he had on deposit in the Avenue State Bank $304.50, in the Oak Park Trust and Savings Bank $689.95, and notes amounting to $709,—a total of $2128.78. The proof shows, and the decree finds, that at the time the contract of sale was made Moore's condition was such that he was being given a quart, each, of whisky and gin per week to stimulate him and that he had a lease of life only from day to day. We think the finding warranted by the proof that no necessity ever arose for selling the land. Both the master's report and the decree find the land was worth, at the time the contract of sale was made, $10,000, and in our opinion the finding is supported by the evidence. It seems apparent Koethe did not make the contract of sale because he thought it necessary, for he only received $25 in cash, and the remaining $6975 was not to be paid for fourteen months and bore no interest. It seems clear the conditions upon which Koethe was authorized to sell the land never occurred. Keeney cannot claim any benefit from the contract, for one buying land from an attorney in fact is bound to know the attorney is acting within his powers. *Peabody* v. *Hoard*, 46 Ill. 242; *Short* v. *Kieffer*, 142 id. 258; *Shippen* v. *Whittier*, 117 id. 282.

We have no doubt of the correctness of the decree holding the contract of sale was unauthorized, and that it was inequitable and unreasonable and should be set aside as a cloud on the title to the land. This renders unnecessary a discussion of any of the other errors assigned except the order as to costs.

The costs of the second reference to the master were taxed at $398.95, and the decree orders that $199.48 of that amount be taxed against Keeney and that execution issue therefor; that Lovett, as the executor of the will of

Levi Moore, should pay the other one-half, $199.47, in due course of administration, and the same is ordered taxed against him as executor, and the decree directs the clerk "to issue in behalf of complainants execution so payable therefor." There was no abuse of discretion in taxing the costs as taxed by the chancellor, but the order that an execution issue against the executor for the costs taxed against him, to be paid in due course of administration, was evidently inadvertently made, and the decree will be modified by striking out of it the order for an execution, and as thus modified the decree will be affirmed.

*Decree affirmed.*